## MRS. MARY ANN KALEIKAU *v.* WILLIAM A. HALL.

## No. 1406.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED MAY 29, 1923.          DECIDED SEPTEMBER 8, 1923.

PERRY AND LINDSAY, JJ., AND CIRCUIT JUDGE O'BRIEN,
IN PLACE OF PETERS, C. J., DISQUALIFIED.

DECLARATORY JUDGMENTS—*when not applicable.*

> The courts will not entertain jurisdiction under Act 162, S. L. 1921, and award a declaratory judgment when it appears from the pleadings that the wrongful acts complained of have already been committed and that a cause of action already exists but will leave the party whose rights have been invaded to seek redress according to the established methods of procedure.

ABATEMENT—*pendency of a prior action.*

> An action seeking to obtain a declaratory judgment under Act 162, S. L. 1921, does not abate a subsequent action for *quo warranto* when it appears from the pleadings in the prior action that a declaratory judgment is not applicable to the facts pleaded.

### OPINION OF THE COURT BY LINDSAY, J.

The Hale O Na Alii O Hawaii (hereinafter called the society) is a beneficial corporation holding a charter from the Territory, which, among other things, provides that the officers of the society shall consist of a regent, a president and a large number of other officers. The by-laws provide that the regent shall hold office for life

or until removed for cause, and that the other officers shall hold office until their successors are duly elected and qualified.  Princess Wahikaahuula Kawananakoa is the regent of the society.

On September 3, 1921, a petition under the declaratory judgment statute (Act 162, S. L. 1921) was filed in the first circuit court by William A. Hall and sixteen other persons, as petitioners, against Princess Kawananakoa, Mary Ann Kaleikau and sixteen others, as respondents, the material allegations of the petition being: that petitioners are the duly elected and qualified officers of the society (the petitioner Hall being president), having been duly elected to their respective offices at a regular meeting of the society on April 17, 1921; that the regent has been guilty of wrong-doing in that she has unlawfully suspended certain of the petitioners as officers in the society, written unlawful letters, given unlawful notices and committed other unlawful acts; that, at the instigation of the regent, meetings of the society have been improperly and illegally held and conducted; that the regent has attempted to expel petitioners from the society; that Mary Ann Kaleikau and the other respondents (not including the respondent Kawananakoa) are illegally claiming and pretending to be the duly elected officers of the society (Mary Ann Kaleikau claiming to be president) and that such pretending officers are now attempting to act as officers of the society, collecting dues and other moneys belonging to the society and disbursing the same unlawfully; that said pretending officers have deposited moneys belonging to the society in the bank in the names of certain of themselves as trustees and not in the name of the society as prescribed by its constitution and by-laws; that certain of the respondents have wrongfully and illegally obtained possession of certain of the books, records and other property of the

society and have refused to deliver the same to the petitioners although demand has been made upon them so to do; that certain of the respondents have notified the bank in which funds of the society are deposited not to allow petitioners to withdraw such funds and because of such notification the bank has refused to allow petitioners to withdraw such funds, and that by reason of all of the foregoing the affairs of the society are in an unsatisfactory and chaotic condition and the collection of dues and payment of claims and benefits are hindered and impeded. The petition concludes with a prayer, first—requiring the respondents to appear and plead; second—that the court issue an order to the respondents to appear and show cause why they and each of them should not be enjoined and restrained from collecting, withdrawing, paying out, or otherwise disposing of any and all moneys or property belonging to the society, and to show cause why they should not be ordered to deliver to the petitioners all books, records, documents, property, etc., belonging to the society; third—that the court, after a final hearing, order, adjudge and decree that petitioners are the duly elected officers of the society; fourth—and for such other relief as the court may deem suitable.

To the foregoing petition the respondents filed a joint and several answer denying the material allegations of the petition, asserting that they have committed no unlawful acts in the premises and alleging that they are the duly elected and qualified officers of the society. The matter being thus at issue and undisposed of in the circuit court, Mary Ann Kaleikau filed a petition in said court alleging that, at a regular meeting of the society held on April 17, 1921, she was duly elected president of the society, that she did duly qualify, take and hold the aforesaid office and has held and still holds the same; that on said 17th day of April, 1921, William A. Hall did

attempt to usurp and did usurp the aforesaid office of president and has ever since said date unlawfully and without right attempted to usurp and has usurped the aforesaid office and unlawfully and without right attempted to exercise and has exercised the said office and the functions and duties thereof. Plaintiff prays that a writ of *quo warranto* issue directing said Hall to appear and show by whose and by what authority he claims the right to exercise the duties of president of the society and why a judgment of ouster should not be entered against him.

To the petition for the writ of *quo warranto* the defendant Hall pleaded in abatement the aforementioned declaratory judgment action now pending in the circuit court, setting forth in his plea that the issues and questions raised in the action of *quo warranto* are identical with and fully covered by the issues raised in the aforesaid pending action; that the two actions relate to the same cause of action and are based upon the same state of facts and that full and complete relief in the premises can be obtained in the said pending action. The plaintiff in the *quo warranto* action demurred to the plea in abatement on the ground that the matters contained therein were not sufficient in law to abate the action of *quo warranto*. The circuit judge sustained the demurrer and the matter comes here upon an interlocutory appeal from the decree sustaining the demurrer.

In order to determine whether the pending action for a declaratory judgment abates the proceeding for *quo warranto,* it becomes necessary to ascertain whether the circuit court, under the facts set forth in the petition for a declaratory judgment, is empowered to entertain jurisdiction of the matter and to grant the relief prayed for. The action for a declaratory judgment was brought under Act 162, S. L. 1921, which reads as follows:

"Section 1.   In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for.   Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

"Section 2.   Declaratory judgments may be obtained and reviewed as other judgments, according to the laws of the Territory of Hawaii relating to civil procedure.

"Section 3.   Further relief based on a declaratory judgment may be granted whenever necessary or proper.   The application shall be by petition to a court having jurisdiction to grant the relief.   If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaration of right, to show cause why further relief should not be granted forthwith.

"Section 4.   When a declaration of right or the granting of further relief based thereon shall involve the determination of issues of fact triable by a jury, such issues may be submitted to a jury in the form of interrogatories, with proper instructions by the court, whether a general verdict be required or not.

"Section 5.   The parties to a proceeding to obtain a declaratory judgment may stipulate with reference to the allowance of costs, and in the absence of such stipulation the court may make such an award of costs as may seem equitable and just.

"Section 6.   This Act is declared to be remedial; its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor; and it is to be

liberally interpreted and administered, with a view to making the courts more serviceable to the people."

As expressed in section 1 of the act, controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be determined under this act, but "this enumeration does not exclude other instances of actual antagonistic assertion and denial of right." Do the facts as set forth in the petition show such actual antagonistic assertions and denials of right by one of the parties against the other as to authorize the court, under the act, to make a binding adjudication between the parties and to grant the relief prayed for? In other words, was it the intention of the legislature that in a case such as is here presented the ordinary and established rules of procedure need not be followed but that the plaintiffs might resort to this new method of procedure?

For many years the laws of the various states in the Union have been strongly criticized because they have been impotent to afford relief against anticipated injuries. Under the rules of the common law, except in a few instances, the courts have uniformly refused to entertain jurisdiction in cases unless a cause of action actually existed at the time suit was brought. In the case, for example, of two parties occupying contractual relations to each other, if differences of opinion as to the construction of the contract should arise so that the respective parties were uncertain as to their rights and duties in the premises, the parties were not permitted to go to the courts for enlightenment or instruction as to these rights and duties. In such cases, not until a breach of the contract had actually occurred would the courts interfere, and the only relief obtainable by the injured party would be in the shape of compensation for damages already sus-

tained. In other words, the law would not ordinarily prevent anticipated damage, but would only award compensation for damages sustained after the breach. And in many other cases not confined to contractual relationships, parties uncertain as to their duties were, under the old procedure, unable to obtain help or guidance from the courts. A case recently decided in Kansas illustrates the point under discussion. A statute in that state forbids an employee of a railway company operating under a franchise granted by a city or having any contract with a city from holding any city office and imposes a penalty of both fine and imprisonment for so doing. The defendant who was in the employ of a railway company had been elected to hold the office of member of the board of commissioners of the city of Wichita but had not qualified. It was uncertain whether the railway company was operating under a franchise granted by the city of Wichita within the meaning of that term as used in the statute concerning the qualification of city officers. Under the ordinary procedure the only way in which it could have been ascertained whether defendant was eligible for the office to which he had been elected would have been for him to have qualified and assumed the office, in which event, had it subsequently been found that he was ineligible he might have been liable to fine and imprisonment. The State of Kansas had recently, however, enacted a statute authorizing declaratory judgments, and upon a proceeding brought under that statute the court held that the facts presented a typical situation for the application of the declaratory judgment act. See *State* v. *Grove*, 201 Pac. 82. The declaratory act that we are now considering, to wit, Act 162, S. L. 1921, is copied *in toto* from the declaratory judgment act of Kansas.

It is not our purpose to attempt a discussion of the

history of the declaratory judgment and its adoption in several of the States as well as in this Territory. That matter has been ably and fully presented by Professor E. R. Sunderland in 16 Michigan Law Review and by Professor E. M. Borchard in 28 Yale Law Journal. Assuming that the facts set forth in the petition for a declaratory judgment are true, the situation presented by these facts amounts in substance to this: Hall and his associates, the petitioners, are the duly elected officers of the society. Mary Ann Kaleikau and her associates, the respondents, are illegally claiming and pretending to be the duly elected officers of the society and have actually usurped these offices and are now illegally exercising the duties and powers of said offices. The respondents are not merely *threatening* to invade the rights of petitioners, but have already actually invaded and infringed these rights. The case presented is not one in which a friendly controversy has arisen over the legal rights of the parties and in which the parties desire to be afforded relief from uncertainty and insecurity without requiring one of the parties to assert his rights so as to enable him to maintain an ordinary action. The respondents have already asserted their alleged rights in no uncertain manner and by unequivocal acts and conduct. It is clear, therefore, that under the facts pleaded an immediate cause of action exists between the parties for which the ordinary action of *quo warranto* would lie and in which the rights of the respondents to hold the offices in question would be fully litigated and determined. Under such circumstances then, and notwithstanding that the laws of this Territory are capable of affording petitioners adequate relief, can it be said that it was the intention of the legislature, in enacting the declaratory judgment act, to give to petitioners and others similarly

situated a new remedy in addition to that already in existence?

It is evident from the language of the act itself that it was not the intention of the legislature to provide a new remedy or method of procedure for cases for which an adequate remedy and method of procedure had already been provided. The legislature was aware that although, as the law then stood, there were many circumstances surrounding controversies over legal rights which gave rise to uncertainty and insecurity in the minds of the parties, the law had made no provision whereby such uncertainty and insecurity could be removed. For this reason the declaratory judgment act was enacted, the clearly expressed purpose and intent of the act being "to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor." The obvious purpose of the act is for the decision of questions which could not under the older method be brought to judicial cognizance and not to provide new or additional remedies where remedies already existed. In other words, the intent of the act is to have the courts render declaratory judgments which may guide parties in their future conduct in relation to each other with a view rather to avoid litigation than in aid of it. This is the construction placed in England on declaratory judgments where such judgments have been in vogue for more than fifty years. "The power to make a declaratory judgment is a discretionary one, and will only be exercised with care and caution. It will not as a rule be exercised where * * * some other statutory mode of proceeding is provided." The Laws of England, Earl Halsbury, Vol. 18, p. 184. While the English courts appear to have gone a long way in permitting resort to the declaratory

judgment as a means of settling controversies, we have not been able to discover nor has our attention been called to any case in which this form of relief has been permitted where the parties might have obtained relief through the recognized and established method of procedure. And a declaratory judgment was refused in England where proceedings were prescribed in another court than the one in which the application was made. 2 Ch. 50 C. A. Nor do the English courts permit resort to relief by declaratory judgments when a special proceeding has been provided by statute for the determination of the particular jural relations in question. *Barraclough* v. *Brown,* L. R. (1897), A. C. 615, 623. In the case at bar the wrong complained of is not merely threatened, it has already been committed. Speaking of the characteristics of declaratory judgments, Professor E. M. Borchard in 28 Yale Law Journal at page 5 says, "They do not presuppose a wrong already done, a breach of duty."

Just in what class of cases the courts are warranted in proceeding under the declaratory judgment act it is not easy to say nor is it necessary here to decide. From the language of the act it is apparent that the granting of a declaratory judgment is, in a large measure, discretionary with the court and doubtless the cases in which such judgments should be granted depend on the facts and circumstances surrounding each case. The cases in which declaratory judgments appear to be applicable are set forth by Professor Sunderland in 16 Michigan Law Review as follows:

"1. A declaration of rights may be had where there is a present possibility of immediately creating a cause of action, as by a demand or refusal, but the parties have not done so, perhaps through reluctance to precipitate a conflict. This is the typical case for a friendly application to the court. It avoids the necessity of formal hostilities, such as American friendly suits require, and en-

ables the parties to show on the face of the record that there has been a forbearance of any peremptory action. Thus, while an action on a contract, either for specific performance or damages, requires the allegation and proof of a breach by the defendant, a declaration of rights would seem to be available without any such allegation."

"2. Where one party only has a present right of action for legal or equitable relief, but the other will suffer a serious prejudice by delay in bringing it into court, the latter may have a declaration of rights."

"3. Where the plaintiff has no ground for relief but there is a probability, though not a threat, that the defendant may assert rights hostile to him, a declaration of rights may be had."

"4. Where a cause of action for relief is in a condition which might be called inchoate, and lapse of time is necessary to perfect it, the court will declare the rights of the parties."

"5. When the plaintiff has and can have no cause of action for relief, but his dealings with third persons depend on the determination of questions arising between himself and the defendant, a declaration of rights will be made."

"6. Where there is no present cause of action in the ordinary sense but the accrual of such a cause of action will subject the plaintiff to the risk of penalties, the court will declare the rights of the parties."

"7. Where plaintiff as a strict matter of law, has a right to an injunction, yet on account of the peculiar facts of the case the court may prefer to substitute a declaration of right as a more suitable remedy."

"8. Where relief can only be granted in a foreign jurisdiction, the respective rights of the parties may be fixed by a declaration as an aid to the foreign adjudication."

The present case does not fall within any of the above enumerated classes and in our opinion the facts presented are not such as to warrant the court's applying the declaratory judgment act.

Inasmuch therefore as the declaratory judgment act is not applicable to the facts involved in this case it follows that the pending action for a declaratory judgment does not abate the action for *quo warranto* and that the circuit judge properly sustained the demurrer to the plea in abatement. The appeal is therefore dismissed.

*B. S. Ulrich* (*Thompson, Cathcart & Ulrich* and *S. W. Fitzherbert* on the brief) for plaintiff.

*A. G. Smith* (*Smith & Wild* on the briefs) for defendant.