MARY KAAA, ET AL., *v.* WAIAKEA MILL
COMPANY.

No. 1630.

EXCEPTIONS FROM CIRCUIT COURT FOURTH CIRCUIT.
HON. H. L. ROSS, JUDGE.

SUBMITTED APRIL 12, 1926.                    DECIDED APRIL 30, 1926.

PERRY, C. J., LINDSAY AND BANKS, JJ.

DECLARATORY JUDGMENTS—*when not applicable.*

>    The courts will not entertain jurisdiction under chapter 170,
> R. L. 1925, and award a declaratory judgment when it appears
> from the pleadings that the wrongful acts complained of have
> already been committed and that a cause of action already exists
> but will leave the party whose rights have been invaded to seek
> redress according to the established methods of procedure.

PARTIES—*misjoinder.*

>    Where a single document contains separate and distinct agree-
> ments between the party of the first part and one hundred and
> three other parties who have undertaken severally and not jointly
> and it is alleged that the party of the first part has violated the
> terms of all of said agreements, the one hundred and three
> parties claiming to be injured may not unite in one action or
> suit against the offending party.

OPINION OF THE COURT BY LINDSAY, J.

Mary Kaaa, together with one hundred and two others
filed a petition entitled "In the Circuit Court of the
Fourth Judicial Circuit Territory of Hawaii," designating
the same "Proceedings to Recover a Declaratory Judg-
ment." A demurrer interposed by respondent having
been sustained and the petition dismissed, the case comes
here upon exceptions to the order sustaining the demurrer
and dismissing the petition.

It appears that each of the petitioners is a holder of
a homestead lot at Waiakea, Island of Hawaii, under a

special homestead agreement from the Territory of Hawaii. On May 1, 1922, each of the petitioners signed a schedule attached to an agreement, the opening paragraphs of which read as follows: "This agreement made and executed on this 1st day of May, A. D. 1922, between the Waiakea Mill Company, an Hawaiian corporation, hereinafter called the Mill, party of the first part, and the several persons whose names are hereafter signed in the schedule hereto, hereinafter called the Homesteaders, parties of the second part. Witnesseth: That in consideration of the mutual undertakings and agreements of the parties hereto, the Mill and the Homesteaders hereby agree and undertake the performance of the obligations hereinafter set forth, but it is the true meaning and intent of this agreement that the parties of the second part have undertaken severally and not jointly, and nothing herein contained shall make any one of the parties of the second part liable or responsible to the Mill for the act of any of the other parties of the second part."

The agreement contains the following pertinent provisions: The homesteaders grant the mill the right to take possession of the homesteaders' lots, the numbers of which are set opposite their respective names, and, for a term of sixteen years, to cultivate sugar cane thereon, all in accordance with the laws of good husbandry; the mill to harvest, transport to the mill and manufacture into sugar all sugar cane grown on said lands, and thereafter to market the sugar; the homesteader to receive as his share of the gross returns from the sugar produced from his land a certain percentage thereof according to the average gross returns; accounting, payment and settlement to be made with each homesteader on the basis of average gross returns and the tons of sugar produced from such homesteader's land for the crop year; the mill at all times to keep full, complete and

accurate books of account, statements and vouchers showing the cost of all operations performed by it under the terms of this agreement, the tonnage of clean, ripe and sound cane harvested from each homesteader's land, the tons of sugar manufactured therefrom, the gross returns of all sugar manufactured and the amounts to be credited to each homesteader, and will permit the homesteader's auditor or agent to examine such books of account at any time during legal business hours and to audit same quarterly and upon the completion of the crop; each homesteader is required to establish at his own expense permanent posts distinctly marking the boundaries of his land to be maintained by the mill. No homesteader shall part with his said homestead lot except upon the condition that his grantee or other person taking the same from him shall take it upon and subject to the terms and conditions herein set forth, so that the covenants and agreements herein contained shall run with the land and be binding upon each homesteader's heirs, executors, administrators, grantees, assigns and lessees.

In the petition it is alleged that the respondent has violated the terms of the agreement in divers and sundry ways and specifically in the following particulars: Respondent has failed and neglected to cultivate the crops on the lands of petitioners in accordance with the laws of good husbandry and has employed methods in cultivating, fertilizing and harvesting said crops which were extravagant, nonproductive and wasteful. Respondent has failed and neglected to keep proper books of account and the accounts kept by respondent are incomplete and inaccurate and designed to deceive petitioners and to deprive them of their just share of the profits from their respective crops; said accounts are not kept in a manner to admit of complete checking. Respondent has charged against petitioners as "cost of operation" large sums

grossly in excess of the actual cost of operation with the intent on the part of respondent to unduly profit thereby and deprive petitioners of their due share of the profits. Respondent has failed to render a true accounting to petitioners; that as to the year 1923, notwithstanding frequent demands, respondent rendered no account to petitioners until February, 1925, at which time it rendered an account purporting to show a profit of $10,397.83 to be divided between it and petitioners, whereas in truth and fact the profit for that year was many times that amount; that said statement was false and was rendered by respondent with the intent to deprive petitioners of their just share of the profits; that as to the year 1924 respondent although often thereto requested has failed and neglected to render any account to petitioners.

The petition then proceeds to allege that "an actual controversy exists between each of the complainants and the respondent" which requires the determination of the court under the Declaratory Judgment Act (Ch. 170, R. L. 1925) in that complainants "assert their right to the rescission, cancellation and annulment" of said agreement, because of the violations of the terms thereof as above set forth; and petitioners further "assert their right" to a complete accounting between themselves and respondent and that they be paid or credited with the amounts correctly due them.

Complainants "further assert their right" to have said agreement declared null and void for the reason that same is in contravention of section 73 of the Organic Act in that it was not approved by the land board of the Territory of Hawaii.

The petition contains the averment that petitioners have joined herein because of the equities herein and in order to avoid a multiplicity of suits. The petition concludes with a prayer for process; that respondent be

required to appear and specifically and definitely answer each of the allegations of the petition (but not under oath which is waived); that petitioners may have all relief to which they are entitled under chapter 170, R. L. 1925; that the case may be set down and heard before a jury, and that such jury be required to return answers to such interrogatories as shall be propounded to it by the court, with proper instructions; that respondent be required to disclose to petitioners and an accounting be ordered between the respondent and the petitioners and that judgment be ordered for such amount as may be found due upon said accounting; that the agreement be declared canceled and rescinded and held null and void; that proper judgment and orders be entered in conformity with the declared rights of complainants; that complainants have other and further relief, etc., and for costs.

The demurrer interposed was on six grounds. The court sustained the demurrer on grounds 1, 2, 3, 4 and 6. Under the view we take of the case it will be sufficient to consider only grounds two and four of the demurrer.

The second ground of demurrer was that the petition does not state facts sufficient to give the petitioners a cause of action against respondent under the Declaratory Judgment Act.

Assuming that the facts set out in the petition are properly pleaded and therefore admitted by the demurrer, what do these facts disclose? That the parties have entered into a contract, the terms of which one of the parties, to wit, the respondent, has violated in several specified particulars; that respondent has failed in its duty under said contract to furnish petitioners with proper and accurate accounts and statements concerning the business dealings between itself and petitioners under the contract; and that said contract lacks the approval of certain public officials and was therefore void *ab initio*.

This being the case, a cause of action or suit, under established methods of procedure, has accrued in favor of petitioners, but, because of the situation thus disclosed, it is insisted by petitioners that this is a case in which a declaratory judgment is peculiarly applicable, for the reason that a money judgment alone is not sought, but petitioners assert that they are entitled to several distinct kinds of relief, that is to say, because of dereliction of duty on the part of respondent, petitioners, besides being entitled to recover damages, are further entitled to have the contract set aside and held for naught; petitioners are also entitled to an accounting between themselves and respondent; and, finally, petitioners are entitled, in this proceeding, to have the court declare as a matter of law that the contract in question is null and void.

With this contention we are unable to agree, for there is no reason to believe that, if the matters and things set out in the petition were properly pleaded in an appropriate action at law or suit in equity, the courts have not ample power to afford petitioners full, adequate and complete relief. In *Kaleikau* v. *Hall,* 27 Haw. 420, this court has held that the courts will not entertain jurisdiction under the Declaratory Judgment Act when it appears that the wrongs complained of have already been committed and that a cause of action already exists, but will leave the injured party to seek redress according to the established methods of procedure. In that case the court cited an article by Professor Sunderland in 16 Michigan Law Review in which the learned author set forth seven classes of cases in which he deemed that declaratory judgments might be obtained. The case made out by the petition herein does not fall within any of said enumerated classes. It is contended by counsel for petitioners that in *Kaleikau* v. *Hall, supra,* the court did not go so far as to hold that, if a cause of action has already

accrued in which a remedy could be obtained in an action at law or by bill in equity, the court would not take jurisdiction under the declaratory judgment law, but that all that was held in that case was that the court would not take jurisdiction under the declaratory judgment law when there is some other *statutory* mode of proceeding provided for. Petitioners are in error in this contention, for an examination of the opinion in *Kaleikau* v. *Hall* shows clearly that, although the court did refer to the fact that relief by declaratory judgments had been refused in England when relief for the wrong alleged was provided for by statute, this court did not base its decision on the fact that the relief was provided for by statute but did so on the theory that relief under the Declaratory Judgment Act was not obtainable where relief was already obtainable under established methods of procedure, the court saying, at page 428: "The obvious purpose of the act is for the decision of questions which could not under the older method be brought to judicial cognizance and not to provide new or additional remedies where remedies already existed," and again: "While the English courts appear to have gone a long way in permitting resort to the declaratory judgment as a means of settling controversies, we have not been able to discover nor has our attention been called to any case in which this form of relief has been permitted where the parties might have obtained relief through the recognized and established method of procedure."

Counsel for petitioners makes the further contention that if it be considered that the parties could not be joined as parties-petitioner in an action at law or suit in equity, that fact alone would be a reason for the court's entertaining jurisdiction under the Declaratory Judgment Act. There is no merit in this contention for there is nothing in the Declaratory Judgment Act to indicate that

the legislature had in mind such a radical innovation of the rules of law relating to the joinder of parties to actions at law or suits in equity.

The demurrer was properly overruled on this ground.

The fourth ground of demurrer was that there is a mis-joinder of parties-petitioner. Although the agreement on which the present action is sought to be predicated is set forth in a single document, it is clear that the rights and obligations of the petitioners who signed the same are several, and not joint, for it is so expressly stated in the agreement, and the context of the whole agreement shows that this is what the parties had in mind. In other words, although there is but one document, there are set forth therein one hundred and three separate and distinct agreements, in each of which only one of the petitioners is interested. For the violation of any one of these agreements the respondent may, of course, be proceeded against by the individual injured party but, under no possible theory, can it be contended that, even if it be claimed that respondent has violated every one of these agreements, all of the holders thereof may unite and bring one action against respondent. If respondent has violated the terms of his contract with A, that fact does not give B, C and D the right to unite with A in an action against respondent because respondent had entered into similar contracts with B, C and D. In the instant case the one hundred and three contracts, although similar in terms, are not identical and the holders of these contracts have no community of interest. It is no legal concern of homesteader No. 1 whether the respondent has violated the terms of a contract it had with homesteader No. 103.

If, as a matter of fact, respondent has violated the terms of one hundred and three contracts it was a party to, it has laid itself open to having one hundred and three

actions or suits brought against it, in all of which actions or suits the respective plaintiffs, owing to the facts involved, might well be, and probably would be, entitled to recover different sums of money and other and different kinds and degrees of relief, and in all of such actions or suits respondent would be entitled to interpose such separate pleas and defenses as it might see fit. The demurrer was properly sustained on this ground.

Petitioners in this court urge that the lower court erred in refusing to allow them to amend their petition. It does not appear that leave to amend was ever asked for, and in any event, this alleged error cannot now be considered, for no exception was taken to the ruling of the court in this respect.

The exceptions are overruled.

*D. E. Metzger* for complainants.

*C. S. Carlsmth, H. Holmes* and *H. Edmondson* for respondent.