AUGUSTINE POMBO, A TAXPAYER OF THE COUNTY OF MAUI, TERRITORY OF HAWAII, *v.* DAVID T. FLEMING.

No. 2107.

Argued September 8, 1933.          Decided October 3, 1933.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE GODBOLD IN PLACE OF PARSONS, J., UNABLE TO ATTEND ON ACCOUNT OF ILLNESS.

OPINION OF THE COURT BY BANKS, J.
(Perry, C. J., dissenting.)

This is a motion to dismiss the questions of law reserved by the Honorable Daniel H. Case, judge of the circuit court of the second circuit. The ground of the motion is that since the questions were reserved certain matters have transpired which render it unnecessary to answer them.

The proceeding in which the questions arose was in *quo warranto* and was instituted on May 1, 1933. The purpose was to oust the respondent, David T. Fleming, from the office of chairman and executive officer of the board of supervisors of the County of Maui.

The facts presented by the record may be summarized as follows: Samuel E. Kalama was elected chairman and executive officer of the board of supervisors of the County of Maui at the general election held on November 8, 1932, which office he held until his death, which occurred on February 27, 1933. R. A. Drummond, H. L. Holstein, A. S. Spencer, Alvin K. Silva and H. K. Tatekawa were elected supervisors at said election. David T. Fleming was elected supervisor at the primary election on the 1st day of October, 1932. Under the provisions of the statutes of the Territory, when a vacancy occurs in the office of chairman and executive officer the board of supervisors has the power to appoint a suitable person to fill such vacancy during the remainder of the unexpired term. On April 3, 1933, at a regular meeting of the board, all the members were present except Silva. Fleming presided as acting chairman and executive officer. Supervisor

Drummond moved that Fleming be appointed chairman and executive officer of the board for the remainder of the unexpired term, which motion was duly seconded by Supervisor Spencer. The motion was put to a vote by Fleming and upon roll call Drummond, Spencer, Tatekawa and Fleming voted in the affirmative; Holstein voted in the negative; Supervisor Silva being absent and therefore not voting. Fleming announced that the motion had carried and declared himself duly appointed. On April 4, 1933, he took the required oath of office and filed a bond.

Immediately following the action of the board on April 3, 1933, relating to Fleming's appointment, a motion was made by Supervisor Spencer that H. J. Meyer be appointed supervisor of the County of Maui in place of David T. Fleming. Upon roll call the motion was adopted by the unanimous vote of all the members of the board, except Silva, who was absent. On June 5, 1933, at a meeting of the board at which all of the supervisors except Silva were present, Supervisor Spencer presented the following resolution: "Be it Resolved by the Board of Supervisors of the County of Maui, Territory of Hawaii, that D. T. Fleming be and he is hereby appointed chairman and executive officer of the board of supervisors of the County of Maui." This resolution was seconded by H. J. Meyer and on roll call Drummond, Meyer, Spencer and Tatekawa voted aye. Holstein left the meeting and did not vote. Fleming voted no, saying he had already been appointed chairman.

The theory upon which the *quo warranto* proceedings were instituted was that exclusive of Fleming's vote only three members of the board voted for his appointment and that his vote in his own behalf, being unauthorized by law, his appointment was void.

If, however, the appointment of Fleming on June 5 was

valid, he is now entitled to the office of chairman and executive officer of the board no matter what imperfection there may have been in his title at the time the *quo warranto* proceedings were instituted. The validity of his appointment depends on whether Meyer, whose vote was necessary to it, was legally appointed a supervisor on April 3, and the legality of that appointment in turn depends on whether the office of supervisor, to which Fleming was elected by popular vote in October 1932, was vacant. If it was vacant, then under the laws of Hawaii it was within the power of the board to fill it, and the appointment of Meyer was legal. On the contrary, if there was no vacancy there was nothing to fill and his appointment was futile and the appointment of Fleming likewise was futile.

It is contended by Fleming that his acceptance of the office of chairman and executive officer, to which he believed himself appointed on April 3, is shown by the record and that such acceptance constituted an abandonment or resignation of the office of supervisor, to which he was elected in 1932, and therefore this office was vacant at the time of Meyer's appointment.

As we have already seen, it is undisputed that Fleming, on April 3, voted for his own appointment as chairman and executive officer, and after announcing that the motion had carried declared himself duly appointed. It also appears as an undisputed fact that immediately after this, when Spencer's motion that Meyer be appointed supervisor in the place of Fleming was put to a vote Fleming voted in the affirmative.

Fleming's vote in each of these instances was entirely inconsistent with an intention to continue in the office of supervisor to which he had been elected in 1932. It was, however, consistent with an intention to give up the prior office and accept the latter. This intention was

conclusively indicated when he subsequently took the oath of office and executed a bond. It is true this was done on the day following the proceedings of the board but it was close enough in point of time to reflect his intention at the time these proceedings were had. His acceptance of the office of chairman and executive officer, which we think is clearly shown, in itself constituted an abandonment or resignation of the office of supervisor which he held prior to his acceptance. As a mere supervisor his duties were much more restricted than were those of a supervisor who was also chairman and executive officer. If he had remained in the office of supervisor, to which he was elected, he of course could not have performed the duties that were imposed by law upon the chairman and executive officer. The two offices, therefore, were incompatible. The rule is well settled that the acceptance of a second office incompatible with the one already held vacates the first, and this is true even though the title to the second office fails, as where the election is void. 22 R. C. L. § 63, p. 418. See also 2 McQuillin, Mun. Corp. (2 ed.), § 517, p. 187; *Howard* v. *Harrington,* 96 Atl. (Me.) 769; *Wescott* v. *Scull,* 96 Atl. (N. J.) 407; *State* v. *Wittmer,* 144 Pac. (Mont.) 648; *Commonwealth* v. *Bennett,* 82 Atl. (Pa.) 249.

Fleming's intention to resign the office of supervisor is further indicated by his vote in favor of Meyer as his successor. The very fact that he did so vote carries with it the unmistakable implication that he considered that he had abdicated the office and that it was therefore without an incumbent. Since we have no statute, as have some jurisdictions, prescribing the means by which a resignation shall be accomplished, it may be done either expressly or by implication. The intention is the vital thing to be determined and that may be inferred from the conduct of the party.

When Fleming joined with other members of the board in appointing Meyer to fill the position to which he had been elected, he gave up that position as effectually as though he had expressly resigned, and this is true without regard to the legality *vel non* of his appointment as chairman of the board.

Meyer having been lawfully appointed a member of the board it follows that Fleming's appointment as chairman and executive officer on June 5 was also lawful and that he is now the lawful incumbent of that office.

The issue involved in the *quo warranto* proceedings is therefore moot and the motion to dismiss is granted.

*R. A. Vitousek* for the motion.

*E. Vincent* contra.

### DISSENTING OPINION OF PERRY, C. J.

The facts are not in dispute. The effect of those facts is. I feel unable to concur in the view that on April 3, 1933, when the vote concerning the appointment of Meyer was taken, there was any vacancy in the office which prior to that date had been filled by Fleming. It is true that Fleming cast his vote in favor of the motion appointing Meyer supervisor in the place of himself (Fleming); but this act was quite as consistent with the theory and the view on Fleming's part that Meyer would succeed him whenever he (Fleming) should qualify for the office of chairman and executive officer by taking the oath of office and filing a bond as it was with the theory and the view on his part that he was thereby resigning the office of supervisor. There was no express resignation, either written or oral. Fleming's participation in the vote concerning Meyer was not sufficient, to my mind, to indicate a resignation then and there by Fleming.

On February 16, 1933, when Chairman Kalama was seriously ill, Fleming was appointed, by unanimous vote

of the board, the acting chairman and executive officer. It was by virtue of that appointment that he served as presiding officer at the meeting of April 3. Nothing happened on April 3, either ceremonially or otherwise, to indicate a change in the capacity in which he was acting from that of acting chairman to that of duly appointed and qualified chairman. On the contrary the acts showing qualification and entry into office, to-wit, the taking of an oath and the filing of a bond, both being required by law (R. L. 1925, §§ 1613, 1614), did not occur until the following day. That Fleming did not qualify until April 4 shows clearly, as I think, that on all of April 3 he was acting solely, under the selection of February 16, as acting chairman and that there was not and was not intended to be any release by him of the office of supervisor at any time during April 3. If on all of April 3 he was still serving as acting chairman he was still also serving as an ordinary member of the board of supervisors, for without the latter office he could not have been chosen acting chairman. His appointment as acting chairman did not connote his resignation as a supervisor. It would still have been legally possible, after his selection and service as acting chairman, for some other member of the board to be appointed chairman and executive officer and for Fleming to resume his functions as a mere supervisor.

It is worthy of note that if the vote of June 5 is to be relied upon as the act which definitely placed Mr. Fleming in office as chairman and executive officer it must be on the theory that when the motion was made Fleming was not yet chairman and executive officer. If he was not at that moment chairman and executive officer by virtue of the appointment of April 3 he was still a supervisor or member of the board. How could Meyer's vote be counted under those circumstances? Meyer never

having been appointed to succeed Kalama, it was not legally possible for both Fleming and Meyer to have been members of the board at the moment when the motion of June 5 was put and voted on and without Meyer's participation the motion did not carry.

While a resignation may be found to arise by implication from other facts and circumstances, nevertheless it should not be found to have occurred upon circumstances that are ambiguous in their effect and that are not consistent merely with the theory of a resignation. The motion of April 3 was that Meyer "be appointed supervisor in place of D. T. Fleming." At that time, there being no vacancy in that office, the vote was ineffective and on June 5, when Meyer joined in the supposed appointment of Fleming as chairman and executive officer he (Meyer) was not a duly appointed member of the board and the vote on that day in favor of Fleming's appointment was by less than the majority required by law.

That still leaves open the question whether Fleming on April 3 could lawfully vote for himself as chairman and executive officer and the motion to dismiss "all proceedings herein on the ground that the issue involved is now a moot question" should be denied.