226 P.3d 421

Alberta S. DEJETLEY; John R. Dela Cruz; Deborah Yooko Dela Cruz; Laurie Ann Delima; Roy Y.H. Delima; Michael "Phoenix" Dupree, Garek Paul Eligado; Sheila A. Eligado; Lawrence G. Endrina; Darlene Janice Endrina; Reynold Masaji Gima; Bruce Harvey; Jennifer Philomena Lichter; Ron Mccomber; Phyllis S. Mccomber; Sherri Mora; John W. Ornellas; Gail Riener French; Neal S. Tamashiro; Tom Urpanil, Jr.; and Beverly Zigmond, Plaintiffs–Appellants

v.

Solomon P. KAHO'OHALAHALA, Defendant–Appellee.

No. 29919.

Supreme Court of Hawai'i.

Feb. 10, 2010.

Kenneth R. Kupchak, Robert H. Thomas
& Elizabeth Burroughs, (Damon Key Leong
Kupchak & Hastert), Honolulu, on the briefs,
for plaintiffs-appellants.

Philip P. Lowenthal & Benjamin E. Low-
enthal, Wailuku, on the briefs, for defendant-
appellee.

MOON, C.J., NAKAYAMA, ACOBA,
DUFFY, and RECKTENWALD, JJ.

1. The Honorable Joseph E. Cardoza presided.

Opinion of the Court by ACOBA, J.

We hold that 1) the plain language and
construction of § 3–3 of the Charter of the
County of Maui (CCM) requires a mandatory
and immediate forfeiture of office should a
council member violate the § 3–3 residency
requirement and that such forfeiture auto-
matically results in an immediate vacancy of
that office; 2) impeachment under § 13–13 of
the CCM and recall under § 12–1, et seq. of
the CCM are not remedies for a violation of
§ 3–3, as those provisions cannot effect the
immediacy and vacancy requirements of § 3–
3; 3) declaratory judgment may be a possible
remedy for a violation of § 3–3, as well as
quo warranto; 4) Plaintiffs–Appellants Al-
berta S. Dejetley; John R. Dela Cruz; Debo-
rah Yooko Dela Cruz; Laurie Ann Delima;
Roy Y.H. Delima; Michael "Phoenix" Du-
pree, Garek Paul Eligado; Sheila A. Eligado;
Lawrence G. Endrina; Darlene Janice En-
drina; Reynold Masaji Gima; Bruce Harvey;
Jennifer Philomena Lichter; Ron McCom-
ber; Phyllis S. McComber; Sherri Mora;
John W. Ornellas; Gail Riener French; Neal
S. Tamashiro; Tom Urpanil, Jr.; and Bever-
ly Zigmond [collectively, "Plaintiffs"] should
be freely given leave to amend their com-
plaint to specify quo warranto relief; and 5)
it would be premature for this court to decide
whether in this case quo warranto necessari-
ly precludes an action for declaratory judg-
ment, as an action for quo warranto is not
before this court. Inasmuch as the circuit
court of the second circuit (the court)[1] held
to the contrary as to the aforesaid matters
(1), (2), (3) and (4), the court's March 19, 2009
Order Granting the Motion for Judgment on
the Pleadings (March 19 Order) filed by De-
fendant–Appellant Solomon P. Kahoʻohalaha-
la (Kahoʻohalahala) and the court's May 7,
2009 Order Denying Plaintiffs' Motion for
Relief From Order or Judgment or, in the
Alternative, for Leave to Amend (May 7
Order), are reversed, and the June 23, 2009
Judgment of the court (Judgment) is hereby
vacated, and the case is remanded for further
disposition consistent with this opinion.

I.

Plaintiffs are a coalition of Lānaʻi residents
and voters who sought a declaratory judg-

ment that Kahoʻohalahala, the Maui County Council representative for Lānaʻi, was not a resident of Lānaʻi, had therefore immediately forfeited his office, and that the Lānaʻi council seat was vacant. On November 4, 2008, Kahoʻohalahala was elected to the Lānaʻi seat on the Maui County Council. On November 24, 2008, a complaint was filed against Kahoʻohalahala and also against Roy Hiraga in his official capacity as the County Clerk of the County of Maui and Kevin Cronin in his official capacity as the Chief Election Officer of the State of Hawaiʻi. On January 9, 2009, Kahoʻohalahala moved to dismiss the original complaint on grounds that the court had no jurisdiction because the complaint constituted an unlawful appeal from administrative hearings held before the complaint was filed. On January 29, 2009, Plaintiffs filed their First Amended Complaint for declaratory judgment and injunction against Kahoʻohalahala requesting that the court find Kahoʻohalahala was not a resident of Lānaʻi and that he must immediately forfeit his office. Defendants Hiraga and Cronin were removed from the lawsuit on March 4, 2009. The original complaint contained additional allegations that were not included in the

First Amended Complaint to the effect that 1) Kahoʻohalahala was not a registered voter and that 2) the filing of his nomination papers based upon such false basis constituted fraud on the County and other registered voters.[2]

On February 6, 2009, the court heard the motion to dismiss. On March 4, 2009, the court issued its order denying the motion to dismiss, concluding that many of the arguments in the motion were addressed to the original complaint and that Plaintiffs were no longer contesting Kahoʻohalahala's eligibility to run for office or the election results. The parties disagreed as to whether the court rendered a decision as to its subject matter jurisdiction at that point.

However, the First Amended Complaint prayed for "a declaratory judgment that ... Mr. Kahoohalahala must immediately forfeit the office of Lānaʻi council member" and an injunction to "[e]njoin Mr. Kahoohalahala from.. hold[ing] office as Lānaʻi's representative on the Maui Council." Subject matter jurisdiction was alleged "pursuant to [Hawaiʻi Revised Statutes (HRS) ] §§ 603–2, 603–21.5, 603–21.7 and 632–1."[3] On their faces the

2. On October 20, 2009, this court issued its opinion affirming the November 1, 2008 decision of the Board of Registration for Maui County (Board) which determined that Kahoʻohalahala was not a resident of Lānaʻi for voter registration "purposes of [the November 2008] election[.]" *Dupree v. Hiraga,* 121 Hawaiʻi 297, 299, 219 P.3d 1084, 1086 (2009).

3. HRS § 603–2 (1993) states that "[t]here shall be established in each of the judicial circuits of the State a court with the powers and under the conditions hereinafter set forth, which shall be styled the circuit court of such circuit, as, for instance, the circuit court of the third circuit."

HRS § 603–21.5(a) (Supp.2008) states in part:
The several circuit courts shall have jurisdiction, except as otherwise expressly provided by statute, of:
....
(2) Actions for penalties and forfeitures incurred under the laws of the State;
(3) *Civil actions and proceedings,* in addition to those listed in sections 603–21.6, 603–21.7, and 603–21.8; and
(4) *Actions for impeachment of county officers* who are subject to impeachment.
(Emphases added.)

HRS § 603–21.7 (1993) states in part:
The several circuit courts shall have jurisdiction, without the intervention of a jury except as provided by statute, as follows:

....
(b) Of actions or proceedings in or in the nature of habeas corpus, prohibition, mandamus, *quo warranto, and all other proceedings in or in the nature of applications for writs* directed to courts of inferior jurisdiction, to corporations and individuals, as may be necessary to the furtherance of justice and the regular execution of the law.
(Emphasis added.)

HRS § 632–1 (1993) states in part:
In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed....
*Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties,* ... and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. *Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed; but* the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or

statutes afforded the court subject matter jurisdiction over the First Amended Complaint.

On February 17, 2009, Kahoʻohalahala filed a motion for judgment on the pleadings on the grounds that 1) Plaintiffs could not use declarative and injunctive remedies to evade the express removal procedures provided by the CCM [4] and 2) judicial review of a council member's qualifications was an infringement upon the Maui County Council's legislative authority. The court issued its March 19 order granting Kahoʻohalahala's motion for judgment on the pleadings, finding 1) that if Kahoʻohalahala is not a resident of Lānaʻi, under § 3–3 [5] of the CCM he is under a duty to immediately forfeit his office, 2) that failure to forfeit would constitute nonfeasance, 3) that § 13–13 [6] (impeachment of an officer) and § 12–1 [7] (recall election procedures) of the CCM govern removal for nonfeasance, 4) that Plaintiffs did not constitute five percent (5%) of the voters of the last general election as required for impeachment under § 13–13 of the CCM, and 5) also that there was no verified petition for impeachment before the court, as required under § 13–13 of the CCM, and consequently, the matter must be dismissed. The court noted that the order "provides only that declaratory relief is not an appropriate means of removing an elected official from office" but that impeachment was not the only means of removal.

On March 30, 2009, Plaintiffs filed a motion for relief from the March 19 Order pursuant to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 60(b), or in the alternative for leave to amend their First Amended Complaint to "specifically mention quo warranto by name" pursuant to HRCP Rule 15(a). Kahoʻohalahala opposed the motion on grounds that a second amendment would be unduly prejudicial. In its May 7, 2009 order, the court denied Plaintiffs' motion.

The court entered judgment in favor of Kahoʻohalahala on June 23, 2009. Plaintiffs

---

not, *shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.*
(Emphases added.)

4. There is a disagreement by the parties as to whether Kahoʻohalahala timely argued that impeachment under § 13–13 of the CCM was an acceptable means of removal. Plaintiffs contend that Kahoʻohalahala first raised this argument in his reply memorandum and that the court improperly considered this argument. Kahoʻohalahala contends that the impeachment provision was attached to his motion and this appears correct.

5. CCM § 3–3 (2003) states as follows:

Section 3–3. Qualifications. *To be eligible for election or appointment to the council,* a person must be a citizen of the United States, a voter in the county, *a resident of the county* for a period of ninety (90) days next preceding the filing of nomination papers and at the time of filing of nomination papers a resident in the area from which the person seeks to be elected. *If a council member ceases to* be a resident of the county, or *ceases to be a resident of the council member's residency area during the council member's term of office,* or if a council member is adjudicated guilty of a felony, *the council member shall immediately forfeit office and the seat shall thereupon become vacant.* (Amended 1992)
(Emphases added.) available at http://www.co.maui.hi.us/index.aspx?nid=162.

6. CCM § 13–13 states as follows:

Section 13–13. Impeachment of officers. Appointed or *elected officers may be impeached for* malfeasance, misfeasance or *nonfeasance* in office or violation of the provisions of Article 10. Such impeachment proceedings shall be commenced in the Circuit Court of the Second Circuit, State of Hawaiʻi. The charge or charges shall be set forth in writing in a verified petition for impeachment *signed by not less than five percent (5%) of the voters registered in the last general election.* A charge or charges alleging violation of Article 10 may be set forth in writing in a verified petition for impeachment signed by a majority of the members of the board of ethics. If the court sustains the charge or charges, such officer shall be deemed removed from office. The officer sought to be impeached and the petitioners seeking the impeachment other than the board of ethics shall bear their own attorney's fees and other costs of such proceedings.
(Emphases added.)

7. The court specifically stated that impeachment governs nonfeasance in its order and that impeachment was not the only remedy. The recall provision is referred to in a footnote to the latter statement. CCM § 12–1 states as follows:

Section 12–1. Recall Procedure. Any elective officer or member of a board or commission provided for in this charter may be removed from office by the voters of the county. The procedure to effect such removal shall be in accordance with this Article.

filed their Notice of Appeal on July 6, 2009, appealing the Judgment and the March 19 Order. Transfer to this court was granted on October 9, 2009.[8]

## II.

Plaintiffs raise two questions on appeal. The first asks

whether under [HRS] § 632–1 (1993), a circuit court may declare a forfeiture has occurred and the council seat is vacant upon a determination a council member is not a resident of his residency area, or whether the Charter means only that a council member is subject to an impeachment proceeding for "nonfeasance" after a council member refuses to resign, or a recall election after he is in office for at least six months.

Plaintiffs' second question on appeal asks "whether [the court] abused its discretion when it did not 'freely give' leave to amend the form of the complaint to label the relief sought as a writ of quo warranto."

## III.

Plaintiffs request that the Judgment be vacated and this case be remanded to the court for further proceedings.

## IV.

### A.

As to Plaintiffs' first question on appeal, Plaintiffs initially maintain that the plain text of CCM § 3–3 "created its own self-executing remedy for council members ... who cease to be residents of their residency areas" and requires "immediate" forfeiture and vacancy. In support this proposition, Plaintiffs cite to cases from this and other jurisdictions, including *In re Pioneer Mill Co.*, 53 Haw. 496, 505, 497 P.2d 549, 555 (1972) (holding that the land court's judgment was rendered void on the basis that the land court judge had automatically forfeited his office when he announced his candidacy for lieutenant governor); *Pombo v. Fleming*, 32 Haw. 818, 820, 1933 WL 2402 (Haw.Terr.1933) (county supervisor who took another position in effect "expressly resigned"); *Hollinger v. Kumalae*, 25 Haw. 669, 689, 1920 WL 828 (Haw. Terr.1920) (acceptance of office of supervisor automatically vacated the offices of state senator and state representative); *Lipscomb v. Randall*, 985 S.W.2d 601, 608 (Tex.Ct.App. 1999) (holding that the Flower Mound Town Charter's forfeiture provision for conviction of a crime was self-enacting and automatic regarding a councilman's conviction for assault); *In re Simmons*, 65 Wash.2d 88, 395 P.2d 1013 (1964) (citing *State ex rel. Carroll v. Simmons*, 61 Wash.2d 146, 377 P.2d 421 (1962)) (stating that a judge's felony conviction carried with it automatic forfeiture of the judgeship and created an immediate vacancy; legal proceedings to remove the official were merely ancillary to and in aid of the forfeiture and not a condition precedent to the forfeiture).

Plaintiffs next contend that declaratory relief is available and that the circuit courts have jurisdiction to declare a forfeiture and vacancy pursuant to HRS §§ 603–21.5(a)(2)[9] and 632–1.[10] (Citing *Hawaii's Thousand*

---

8. This case is before us by virtue of our acceptance of a request filed by Plaintiffs for transfer from the Intermediate Court of Appeals (ICA), pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 40.2 (2009) and HRS § 602–58 (Supp.2008). HRS § 602–58 entitled "Application for transfer to the supreme court," states in part as follows:

 (a) The supreme court, in the manner and within the time provided by the rules of court, shall grant an application to transfer any case within the jurisdiction of the [ICA] to the supreme court upon the grounds that the case involves:

 (1) A question of imperative or fundamental public importance;

 . . . .

 b) The supreme court, in a manner and within the time provided by the rules of court, may grant an application to transfer any case within the jurisdiction of the [ICA] to the supreme court upon the grounds that the case involves:

 (1) A question of first impression or a novel legal question; or

 (2) Issues upon which there is an inconsistency in the decisions of the [ICA] or of the supreme court.

9. *See supra* note 3.

10. *See supra* note 3.

*Friends v. City & County of Honolulu*, 75 Haw. 237, 245, 858 P.2d 726, 731 (1993) (holding that similar language in the Coastal Zone Management Act (CZMA), HRS § 205A-6(e) (1985), "clearly allowed" a plaintiff to elect whether to seek relief under the CZMA or by "generic declaratory judgment")). They further assert that the circuit courts must have jurisdiction because the Maui County Council lacks the power to enforce the continuous residency requirement, citing, in contrast, statutes from other jurisdictions and offices where the legislative body was granted authority to manage its own members' qualifications.

Plaintiffs additionally argue that the court "effectively rewrote the [CCM] by ignoring the terms 'shall,' 'immediate,' 'forfeit,' and 'vacancy,' transforming a mandatory, self-executing, and immediate forfeiture and vacancy in § 3-3 into a nonimmediate, discretionary process" by its March 19 Order. (Citing *Leslie v. Bd. of Appeals, County of Hawai'i*, 109 Hawai'i 384, 393, 126 P.3d 1071, 1080 (2006) (noting that the use of the term "shall" indicates mandatory language)); *In re Doe*, 108 Hawai'i 144, 153, 118 P.3d 54, 63 (2005) ("Because that statute states that the court 'may' appoint a guardian, discretion resided in the court as to whether to do so or not."); *Coon v. City & County of Honolulu*, 98 Hawai'i 233, 250, 47 P.3d 348, 365 (2002) (stating that the rules of statutory construction require rejection of interpretation of a statute that renders any part of the statutory language a nullity); *Pioneer Mill*, 53 Haw. at 500, 497 P.2d at 552 (holding that the failure to effectuate the plain meaning of the forfeiture provision would "rewrite the Constitution"). Plaintiffs declare that the court effectively nullified the mandatory "immediate forfeiture" and vacancy requirements of § 3-3 of the CCM when it concluded that judicial remedies of declaratory judgment and quo warranto [11] were not available and in further concluding that discretionary remedies of impeachment under § 13-13 of the CCM or recall under § 12-1 of the CCM were available instead.

### B.

Kaho'ohalahala responds to Plaintiffs' first and third [12] sub-arguments that § 3-3 of the CCM's plain language imposes a duty on the council member to forfeit his office, by contending that in *Pioneer Mill* the statute was structured so that the judge's announcement of candidacy was also the act of forfeiture, but that in CCM § 3-3 forfeiture is not automatic because the act of forfeiture must be triggered upon the occurrence of certain events, i.e., conviction of a felony or loss of residency. Additionally, Kaho'ohalahala objects to Plaintiffs' reliance on foreign jurisdictions arguing, instead, that the cannons of statutory construction govern and that the language in § 3-3 of the CCM is clear and unambiguous. (Citing *County of Hawai'i v. C & J Coupe Family Ltd. P'ship*, 119 Hawai'i 352, 363, 198 P.3d 615, 626 (2008) (stating that, "where the language of the law in question is plain and unambiguous[,] courts must give effect to the law according to its plain and obvious meaning" (*quoting Mikelson v. United Servs. Auto Ass'n*, 108 Hawai'i 358, 360, 120 P.3d 257, 259 (2005))); *Maui County Council v. Thompson*, 84 Hawai'i 105, 106, 929 P.2d 1355, 1356 (1996) (when the charter is plain and unambiguous, the court's "only duty is to give effect to its plain and obvious meaning" (*quoting State v. Baron*, 80 Hawai'i 107, 113, 905 P.2d 613, 619 (1995))); *State v. Fagaragan*, 115 Hawai'i 364, 369, 167 P.3d 739, 744 (App.2007) (turning to "structure" as well as plain language of statute in order to interpret meaning).).

According to Kaho'ohalahala, the failure of a council member to forfeit his or her office constitutes nonfeasance. (Citing *Black's Law Dictionary* 729 (6th ed. 1991) ("As respects to public officials, 'nonfeasance' is substantial failure to perform a required legal duty.")); *Lee v. Corregedore*, 83 Hawai'i 154,

---

11. Plaintiffs argue that although the "court only expressly eliminated declaratory judgment, it also rejected quo warranto as reflected by its refusal to allow amendment of the complaint to specify that the relief sought is in the form of quo warranto."

12. Kaho'ohalahala does not address Plaintiffs' argument that § 3-3 of the CCM requires immediate and mandatory forfeiture or that such forfeiture automatically creates a vacancy.

174 n. 1, 925 P.2d 324, 344 n. 1 (1996) (Levinson, J., dissenting) ("Nonfeasance implies the failure to act where a duty to act existed."); *Baccus v. Ameripride Servs., Inc.*, 145 Idaho 346, 350, 179 P.3d 309 (2008) (" 'Nonfeasance' means the omission of an act which a person ought to do." (citation omitted)). Kaho'ohalahala asserts that the appropriate remedies for nonfeasance are found within CCM §§ 13–13 (impeachment), 12–1 (recall election), 12–1 et seq (removal proceedings), and 12–7 (an elected official can be recalled for any reason). He argues that "[t]he remedy provided by the impeachment proceedings—removal from office based on non-residency—is identical to the remedy sought by [Plaintiffs] in their amended complaint."

As to Plaintiffs' second [13] sub-argument regarding the availability of declaratory relief, Kaho'ohalahala maintains that Plaintiffs may not be granted declaratory relief when "a statute provides a special form of remedy for a specific type of case," [14] that removal of elected officials by the voters is a "special form of remedy for a specific type of case," and that under § 13–13 of the CCM the voters are empowered "to bring impeachment proceedings against elected officials who fail to perform their duties." Kaho'ohalahala also notes that the CCM "provides voters with recall and removal proceedings" as well, under § 12–1 et seq., and that "[a]n elected official can be recalled for any reason" under § 12–7. Again, Kaho'ohalahala asserts that recall and impeachment proceedings would seem to effect the same remedy, i.e., removal of an elected official, but have different procedural requirements.[15] (Citing *Kaleikau v. Hall*, 27 Haw. 420, 424, 1923 WL 2792 (Haw.Terr.1923) (holding that declarato-ry relief cannot replace already-existing procedures such as petitions for quo warranto); *Ex Parte James*, 684 So.2d 1315 (Ala.1996) ("Quo warranto, not declaratory judgment is the exclusive remedy to determine whether or not a party is usurping a public office.") (Brackets and citation omitted.); *Nicolopulos v. City of Lawndale*, 91 Cal.App.4th 1221, 111 Cal.Rptr.2d 420, 423 (2001) (holding that title to public office must be brought through quo warranto proceedings and "cannot be tried by mandamus, injunction, writ of certiorari or petition for declaratory relief") (citation omitted); *Madden v. Houck*, 403 N.E.2d 1133, 1136 (Ind.Ct.App.1980) ("The proper remedy to determine the question of whether a person elected to office possesses the requisite qualifications for eligibility is by an information in the nature of quo warranto[ ] ... [b]ecause the issuance of declaratory judgment would not completely resolve the controversy.") (citation omitted); *Giannotta v. Milliken*, 71 Mich.App. 15, 246 N.W.2d 357, 360 (1976) (dismissing the declaratory action because it "speaks to the procedure required of what we perceive as a clear quo warranto claim"); *Cooper v. State*, 818 S.W.2d 653, 654 (Mo.Ct.App.1991) (stating that declaratory judgment "is neither a general panacea for all legal ills nor a substitute for existing remedies[,]" and concluding that declaratory judgment "is not to be invoked where an adequate remedy already exists"); *Beasley v. City of E. Cleveland*, 20 Ohio App.3d 370, 486 N.E.2d 859, 863 (1984) (declaratory judgment cannot be used to determine if a person should remain in public office); *State v. Franks*, 7 Wash.App. 594, 501 P.2d 622, 624 (1972) ("The proper and exclusive method of determining the right to

---

**13.** Kaho'ohalahala does not directly counter Plaintiffs' second sub-argument as to the court's jurisdiction. Kaho'ohalahala mentions subject matter jurisdiction in his Statement of the Case in that, during the February 6, 2009 hearing on Kaho'ohalahala's Motion to Dismiss, the court did not foreclose the possibility that a future subject matter jurisdiction challenge could be made. Kaho'ohalahala subsequently filed his motion for judgment on the pleadings asserting that declaratory judgment was not an available remedy for Plaintiffs, but challenge to the court's jurisdiction does not seem to have been mentioned again.

**14.** *See* HRS § 632–1, quoted *supra*, at note 3.

**15.** Recall proceedings detailed in sections 12–1 through 12–9 of the CCM essentially provide that the question of whether an elected officer should be removed be brought to the voters through a special election, requiring a petition signed by at least 20% of the voters in the last election and occurring no sooner than six months after the elected official took office. Impeachment proceedings are to be commenced in the Second Circuit Court with charges set forth in a verified petition, signed by at least 5% of the voters in the last election. There is no waiting period before impeachment proceedings may be instituted.

public office is through a quo warranto proceeding." (Citation omitted.))).

### C.

In Plaintiffs' reply to Kaho'ohalahala's first and third sub-argument response, Plaintiffs assert that § 3–3 of the CCM does not impose a duty upon the council member to resign, because the loss of office is an automatic and self-executing provision requiring no action on Kaho'ohalahala's part. (Citing *Black's Law Dictionary* 548 (5th ed.1979) (to "forfeit" means "[t]o lose, or lose the right to, by some error, fault, offense or crime"); *Pioneer Mill*, 53 Haw. at 498, 497 P.2d at 551 (holding that Land Court judge "had forfeited his judgeship"—not that he had a duty to resign)). Plaintiffs restate their position that § 3–3 of the CCM is automatic and self-executing, reciting support used in their opening brief.

In reply to Kaho'ohalahala's second sub-argument response, Plaintiffs assert that declaratory relief is available because there is no other "special remedy" provided by the Charter or another statute that would bar Plaintiffs from obtaining declaratory relief under HRS § 632–1. (Citing HRS § 632–1 ("the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy ... shall not debar a party from the privilege of obtaining a declaratory judgment"); *Punohu v. Sunn*, 66 Haw. 485, 487, 666 P.2d 1133, 1135 (1983) (holding that declaratory judgment was not available because a special remedy existed under HRS ch. 91 for administrative appeals); *Costa v. Sunn*, 64 Haw. 389, 389, 642 P.2d 530, 531 (1983) (holding that administrative procedures act expressly authorized declaratory relief); *Travelers Ins. Co. v. Hawaii Roofing, Inc.*, 64 Haw. 380, 386, 641 P.2d 1333, 1337 (1982) (holding that declaratory judgment was not available because a

special remedy existed through worker's compensation statutes)). Plaintiffs restate their support from *Hawaii's Thousand Friends*, 75 Haw. at 245, 858 P.2d at 731, which stated that the CZMA section providing that "[n]othing in this section shall restrict any right that any person may have to assert any other claim or bring any other action" "clearly allowed" a person to "bring a generic declaratory action under HRS § 632–1 without the need to proceed under" the CZMA.

According to Plaintiffs, quo warranto is not a "special remedy" [16] to be used to the exclusion of declaratory relief. (Citing HRS § 659–10 (1993) ("Nothing in this chapter shall preclude the obtaining of relief available by quo warranto by other appropriate action"); *Office of Hawaiian Affairs v. Cayetano*, 94 Hawai'i 1, 8, 6 P.3d 799, 806 (2000) (holding that quo warranto needed to create vacancy because U.S. Supreme Court decision, unlike the Charter, did not automatically create one)). They further state that Kaho'ohalahala's reliance on cases from other jurisdictions is misplaced because those jurisdictions do not contain a non-exclusivity provision similar to that in HRS § 659–10. Plaintiffs additionally assert that because § 3–3 of the CCM creates a vacancy in office upon forfeiture, a writ is not necessary to do so. (Citing *Office of Hawaiian Affairs*, 94 Hawai'i at 8, 6 P.3d at 806 (stating that when a court decision or a statute does not automatically create a vacancy in office, quo warranto is available to do so)).

### V.

### A.

As to Plaintiffs' second question on appeal, Plaintiffs first maintain that the remedy of a writ of quo warranto pursuant to HRS §§ 659–1 [17] and 659–10 [18] is available, and

---

16. Plaintiffs argue also that Kaho'ohalahala did not properly raise the claim that quo warranto was a "special remedy" in the proceedings below and that, as such, this argument should be precluded. (Citing *Hill v. Inouye*, 90 Hawai'i 76, 82, 976 P.2d 390, 396 (1998) (appellate courts "will not consider an issue not raised below unless justice so requires" (quoting *State Farm Mut. Auto. Ins. Co. v. Dacanay*, 87 Hawai'i 136,

145 n. 14, 952 P.2d 893, 902 n. 14 (1998)))). However, this claim is relevant to Plaintiffs' motion to amend to "specify" quo warranto in its First Amended Complaint that was filed in the court.

17. HRS § 659–1 (1993) states:

> **Definition.** This is an order issuing in the name of the State by a circuit court and *direct-*

that the court has jurisdiction to issue a writ of quo warranto pursuant to HRS § 603–21.7. (Citing *Office of Hawaiian Affairs*, 94 Hawai'i at 8–9, 6 P.3d at 806–07 (stating that the writ is available to create vacancy in office where statute does not do so automatically)).

Plaintiffs next assert that the remedy of quo warranto is substantively the same as a declaratory judgment. They argue that declaratory relief is not limited in scope, similar to quo warranto, and that the court would have to determine whether Kaho'ohalahala was a resident of Lāna'i under either action. Additionally, Plaintiffs cite to a number of state and federal cases to support their contention that the First Amended Complaint need only give Kaho'ohalahala clear notice under HRCP Rule 8, and that the substance of the claim, not form, matters.[19]

Also, Plaintiffs urge that they should have been "freely given" leave to amend their complaint. (Citing *Hirasa v. Burtner*, 68 Haw. 22, 26, 702 P.2d 772, 775 (1985) (stating that, "[i]n the absence of any *apparent* or *declared reason*" "such as *undue delay* [and] *bad faith* ... on the part of the movant, *repeated failure* to cure deficiencies by amendments previously allowed, *undue prejudice* to the opposing party by virtue of allowance of the amendment, *futility* of

ed to a person who claims or usurps an office of the State or of any subdivision thereof, or of any corporation or quasi-corporation, public or private, or any franchise, *inquiring by what authority the person claims the office or franchise.*
(Emphases added.)

18. HRS § 659–10 entitled "Other actions," states that "[n]othing in this chapter shall preclude the obtaining of relief available by quo warranto *by other appropriate action.*" (Emphasis added.)

19. Plaintiffs' Opening Brief cites to *Henderson v. Professional Coatings Corp.*, 72 Haw. 387, 395, 819 P.2d 84, 92 (1991) ("Pleadings should not be construed technically when determining what the pleader is attempting to set forth but should be construed liberally so as to do substantial justice."); *Perry v. Planning Comm'n*, 62 Haw. 666, 685, 619 P.2d 95, 108 (1980) ("Modern judicial pleading has been characterized as 'simplified notice pleading.' Its function is to give opposing parties 'fair notice of what the ... claim is and the grounds upon which it rests,'" (Quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).)); *Hall v. Kim*, 53

amendment, etc .... the leave should, as the rules require, be 'freely given'" (quoting *Bishop Trust Co. v. Kamokila Dev. Corp.*, 57 Haw. 330, 337, 555 P.2d 1193, 1198 (1976) (other citation omitted)) (emphases added))); HRCP Rule 15(a) (stating that "leave shall be freely given when justice so requires").

Plaintiffs maintain that the court did not articulate a reason for the denial to amend, which alone is an abuse of discretion.[20] They further assert that in addition to the absence of declared reasons, there was no apparent basis for denying the motion to amend. Plaintiffs argue there was no undue delay. According to Plaintiffs, there was also no improper purpose and no pattern of "repeated failure to cure deficiencies by amendments previously allowed" anywhere in the record. Next, Plaintiffs contend that Kaho'ohalahala would not suffer prejudice because the complaint would only be changed in form, not substance, and the motion to amend was requested in the early pleading stage. Lastly, Plaintiffs assert that the amendment would not be futile.

## B.

Kaho'ohalahala responds to Plaintiffs' sec-

Haw. 215, 224, 491 P.2d 541, 547 (1971) ("[B]y the adoption of [the HRCP,] we have rejected the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and in turn accepted the principle that the purpose of pleading is to facilitate a proper decision on the merits." (Internal quotation marks and citation omitted.)).

20. The court declared that in its discretion and based upon its prior order (presumably the March 19 Order Granting the Motion for Judgment on the Pleadings), it deemed denying the motion to amend to be the appropriate decision. The court stated:

The [c]ourt concludes that for purposes of the motion for relief that the record supports denial of that motion. I'm going to therefore deny that motion. And with respect to the motion to amend, for leave to amend, after the [c]ourt's earlier order, in the [c]ourt's view, given the [c]ourt's previous ruling, given the current status of this case and the history of these proceedings, the proper exercise at the [c]ourt's discretion relative to the request for leave to amend is to deny that motion as well.

ond question on appeal,[21] asserting that the court's reason in denying the motion to amend the complaint was because Kahoʻohalahala would suffer undue prejudice if Plaintiffs were allowed to amend their complaint. (Citing *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 426–27 (5th Cir.2004)[22] (stating that court's failure to state reason for denial of leave to amend complaint "is unfortunate but not fatal in affirmance" when the record shows "ample and obvious grounds") (citation and internal quotation marks omitted)).

According to Kahoʻohalahala, allowing Plaintiffs to amend their complaint from a declaratory action to one for quo warranto would have been unfairly prejudicial because a new quo warranto action would have changed the lawsuit against Kahoʻohalahala from one against him in his personal capacity to one against him in his official capacity. Kahoʻohalahala maintains that, although Corporation Counsel had a duty to represent him, Corporation Counsel had refused to represent Kahoʻohalahala. Kahoʻohalahala asserts that thus, if the amendment were granted, he would have to resort to privately-

retained counsel, incurring personal costs and expenses. (Citing § 8–2.3(2)[23] of the CCM.[24]) However, Kahoʻohalahala does not explain why Corporation Counsel refused the tender of his defense. He refers to the record, but the record does not explain Corporation Counsel's refusal.

## C.

In Plaintiffs' reply to Kahoʻohalahala's response to the second question on appeal, Plaintiffs contend that the court did not deny the motion to amend because of undue prejudice to Kahoʻohalahala. Plaintiffs note that Kahoʻohalahala fails to provide a cite to the record for where the court stated that allowing the amended complaint would prejudice Kahoʻohalahala. They maintain that nothing in the record indicates whether the court agreed or did not agree with Kahoʻohalahala's objection on prejudicial grounds.

Further, Plaintiffs reply that the basis of their complaint, i.e., that Kahoʻohalahala was not a resident of Lānaʻi and had therefore forfeited his council seat, is the same whether the relief requested is declaratory or is in

21. Kahoʻohalahala also argues that Plaintiffs failed to properly include any argument underlying their second point of error in their Opening Brief and therefor pursuant to HRAP Rule 28(b)(7), which states that "[p]oints not argued may be deemed waived," the argument should be waived. This seems incorrect as Plaintiffs did argue that the May 7 Order, denying their motion to amend, was an abuse of discretion by the court because they should have been "freely given" leave to amend their complaint, although not explicitly headlined as their second point of error. It may be noted that, in their Opening Brief, Plaintiffs failed to support their argument that the court's failure to articulate a reason constituted an abuse of discretion. However, Plaintiffs do cite to case law supporting that proposition in their Reply Brief. (Citing *Keawe v. Hawaiian Elec. Co.*, 65 Haw. 232, 239, 649 P.2d 1149, 1154 (1982) (stating that failure to articulate any reason for the denial is alone an abuse of discretion).)

22. Kahoʻohalahala cites to *Federal Home Loan Mortgage Corp. v. Transamerica Insurance Co.*, 89 Hawaiʻi 157, 162 n. 1, 969 P.2d 1275, 1280 n. 1 (1998), for the proposition that "Rule 15(a) of the Federal Rules of Civil Procedure is functionally identical to Rule 15(a) HRCP" and that "[w]here a Hawaiʻi rule of civil procedure is identical to the federal rule, the interpretation of this rule by the federal courts is highly persuasive." (Quot-

ing *Wong v. Takeuchi*, 87 Hawaiʻi 320, 329, 955 P.2d 593, 602 (1998)).

23. CCM § 8–2.3(2) states in part:

> **Section 8–2.3. Powers, Duties, and Functions.** The corporation counsel shall:
> . . . .
> 2. Be the chief legal advisor and legal representative of the County of Maui; of the council, the mayor, all departments, and all boards and commissions; and of all officers and employees in matters relating to their official duties.

24. Kahoʻohalahala also cites to numerous cases in which the government attorney defended a public official. *See In re Application of Ferguson*, 74 Haw. 394, 846 P.2d 894 (1993) (Attorney General defended district court judge); *In re Application of Thomas*, 73 Haw. 223, 832 P.2d 253 (1992) (corporation counsel defended deputies corporation counsel); *Okuda v. Ching*, 71 Haw. 140, 785 P.2d 943 (1990) (corporation counsel defended prosecuting attorney); *Crossley v. Ing*, 50 Haw. 470, 442 P.2d 459 (1968) (Attorney General defended lieutenant governor and governor); *In re Sherretz*, 40 Haw. 366, 1953 WL 7577 (Haw.Terr.1953) (county attorney defended city personnel director); *In re Jones*, 34 Haw. 12, 1936 WL 4424 (Haw.Terr.1936) (Attorney General defended commissioner of Territorial Board of Archives).

the form of a writ of quo warranto. Next, Plaintiffs contend that Kahoʻohalahala's assertion of prejudice because of "additional discovery, costs, and expenses" is incorrect because the case has not progressed beyond the pleading stages in the court yet and there is thus no evidence that he would incur any "additional expense." Finally, Plaintiffs respond that it makes no difference that Corporation Counsel refused the tender of defense for Kahoʻohalahala. According to Plaintiffs, Kahoʻohalahala would have to retain private counsel inasmuch as, "in a quo warranto case, the plaintiffs would be seeking a writ on behalf of the people and in the public interest." (Citing HRS § 659–1[25]) (stating that quo warranto "is an order issuing in the name of the State by a circuit court").

## VI.

The first question raised on appeal implicates two issues. The first issue is whether § 3–3 of the CCM is a mandatory, immediate forfeiture provision that is triggered when a council member fails to be a resident of his or her county, or whether it, instead, works in tandem with other provisions of the CCM, specifically impeachment under § 13–13 or recall under § 12–1 to effect removal from office. The second issue is whether declaratory action is an available method of relief under CCM § 3–3.

## A.

■■■ This court's statutory construction is guided by established rules:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our

foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

*Rees v. Carlisle*, 113 Hawaiʻi 446, 452, 153 P.3d 1131, 1137 (2007). "The interpretation of the charter is similar to the interpretation of a statute." *Thompson*, 84 Hawaiʻi at 106, 929 P.2d at 1356.

■■■ Kahoʻohalahala and the court below maintained that CCM § 3–3[26] places a duty upon the council member to resign his position and that failure to do so constitutes nonfeasance. This proposition would seem to be supported by the words, "the council member *shall* . . ." (emphasis added), implying that a duty is imposed on the council member.

However, the plain meaning of "forfeit" necessitates a different interpretation of the provision. "Forfeiture" means "loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." *Black's Law Dictionary* 722 (9th ed.2009). The last sentence of § 3–3 of the CCM states in part, "the council member shall immediately forfeit office." Thus, the correct construction of the provision would be that "the council member shall immediately" lose his right or privilege of "office." Here, there cannot be a *duty* to lose one's office, instead the office is automatically lost.

In *Pioneer Mill*, this court held that a prior provision in the Hawaiʻi Constitution that "[a]ny justice or judge who shall become a candidate for an elective office shall thereby forfeit his office,"[27] meant that the land court judge forfeited his judgeship upon announcement of his candidacy for political office. 53 Haw. at 498, 497 P.2d at 551. The

---

**25.** *See supra* note 17.

**26.** *See* § 3–3 of the CCM quoted *supra*, at note 5, specifically the last sentence of the provision at issue, which states that "[i]f a council member ceases to be a resident of the county, *or ceases to be a resident of the council member's residency area* during the council member's term of office, . . . the council *member shall immediately forfeit*

*office and the seat shall thereupon become vacant."* (Emphases added.)

**27.** *See* Haw. Const. art. V, § 3. This provision was later eliminated when article V was amended and redesignated as article VI. But, at the time of the *Pioneer Mill* case, it was in effect.

forfeiture in that case was triggered by the judge's announcement of his candidacy.[28]

However, Kahoʻohalahala argues that the language in § 3–3 of the CCM is different from that in *Pioneer Mill,* because § 3–3 requires an "event" such as lack of residency or conviction of a felony to precipitate the forfeiture, rather than an "act" on the part of the officer. Kahoʻohalahala, however, does not cite any support for the proposition that an event triggers the provision, but an act does not. This distinction seems to be without basis, as in either case the provision would be effectuated and the officer would thus forfeit his or her position.

Additionally, the words preceding "forfeit," i.e., "shall" and "immediately," lend credence to the mandatory and automatic nature of § 3–3. "Shall" "is the mandatory sense that drafters typically intend and that courts typically uphold." *Black's Law Dictionary* at 1499. This court has held that "shall" indicates mandatory language. *Leslie,* 109 Hawaiʻi at 393, 126 P.3d at 1080 (stating that shall "is generally imperative or mandatory" (quoting *Black's Law Dictionary* 1375 (6th ed.1990))); *Gray v. Admin. Dir. of the Court, State of Hawaiʻi,* 84 Hawaiʻi 138, 150, 931 P.2d 580, 592 (1997) ("The word 'shall' is generally construed as mandatory in legal acceptation." (Quoting *In re Adoption of Watson,* 45 Haw. 69, 79, 361 P.2d 1054, 1059 (1961).)). "Immediate" means "[o]ccuring without delay; instant." *Black's Law Dictionary* at 816. Thus, the phrase "shall immediately forfeit office" in § 3–3 of the CCM, by its plain meaning indicates a mandatory, instant, loss of office. Kahoʻohalahala and the court maintain that there was a duty on the part of the council member to leave his

office. However, given the plain meaning of "shall immediately forfeit office," a duty is not imposed to leave office but, rather, the right of office is automatically and instantly lost.

■ The remaining portion of CCM § 3–3 supports this interpretation. The following words "and the seat *shall thereupon become vacant* " (emphasis added), confirm the conclusion that the office is "immediately" lost and at that instant, becomes vacant. " 'Courts are bound to give effect to all parts of a statute, and ... no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute.' " *Blair v. Harris,* 98 Hawaiʻi 176, 179, 45 P.3d 798, 801 (2002) (quoting *Keliipuleole v. Wilson,* 85 Hawaiʻi 217, 221, 941 P.2d 300, 304 (1997) (other citations omitted)). Thus, in order to give meaning to all portions of § 3–3, § 3–3 must be construed as meaning that upon loss of residency, a council member both loses his or her position, and his or her seat becomes vacant.

Furthermore, in construing § 3–3 of the CCM, this court's rules of statutory construction should also give effect to legislative intent. *State v. Wells,* 78 Hawaiʻi 373, 376, 894 P.2d 70, 73 (1995) (stating that "our foremost obligation is to ascertain and give effect to the intention of the legislature" (quoting *Pac. Int'l Servs. Corp. v. Hurip,* 76 Hawaiʻi 209, 216, 873 P.2d 88, 95 (1994))). Under CCM § 3–1, the drafters of the charter intended that the Maui County Council consist of nine members and that, "one shall be a resident of the Island of Lānaʻi." [29] Hence, § 3–1 man-

---

**28.** In *Pioneer Mill,* only the rulings made by the judge after his announcement were voided because it was determined that the judge forfeited his office when he made the announcement. This was not an action to specifically remove the judge, however. Kahoʻohalahala argues that the case only holds that the judge's rulings were void, but that the judge was not specifically removed. Plaintiffs counter in their reply that Kahoʻohalahala misstated the court's conclusion in *Pioneer Mill,* in that not only was the judgment rendered void, but that this court held the judge had lost his office by virtue of his becoming a candidate.

The opinion states, "We have concluded that the [l]and [c]ourt judge had become a candidate for public office at the time he rendered the decision below, and that under the Hawaii Constitution, he had forfeited his judgeship." *Pioneer Mill,* 53 Haw. at 498, 497 P.2d at 551. It appears that this court did rule that the judge had forfeited his position, but no action was taken to effect the forfeiture because the judge had already stepped down to run for political office a little more than a month after his announcement of candidacy. *Id.* at 506, 497 P.2d at 556.

**29.** § 3–1 of the CCM states in part, as follows:

dates that one member of the council be a resident of Lāna'i. Section 3–3 of the CCM enforces the intention of the drafters, by rendering any council member's seat vacant upon the loss of residency.

■ There is nothing in CCM § 3–3 to suggest how the removal from office should be enforced. But, CCM § 3–3 cannot be implemented through other removal provisions of the CCM without losing its mandatory and immediate effect. *Potter v. Hawaii Newspaper Agency,* 89 Hawai'i 411, 422, 974 P.2d 51, 62–63 (1999) ("Our rules of statutory construction require us to reject an interpretation of [a] statute that renders any part of the statutory language a nullity."); *see also State v. Jumila,* 87 Hawai'i 1, 10, 950 P.2d 1201, 1210 (1998); *Shultz v. Lujan,* 86 Hawai'i 137, 141, 948 P.2d 558, 562 (1997); *Konno v. County of Hawai'i,* 85 Hawai'i 61, 71, 937 P.2d 397, 401 (1997). Although Kaho'ohalahala and the court believed that impeachment under § 13–13 is a remedy for violation of § 3–3, impeachment is not "immediate" as directed by the language, "shall immediately forfeit," nor does impeachment comport with the mandatory vacancy language in § 3–3 of "shall thereupon become vacant," inasmuch as impeachment is a discretionary measure. Under § 13–13 of the CCM, impeachment procedures require a verified petition "signed by not less than five percent (5%) of the voters registered in the

last general election." Gathering five percent of Maui County's voters alone would not fit within the immediacy language of § 3–3, in addition to the time it would take for the second circuit court to set and hold impeachment proceedings. Moreover, a voter's decision to sign the verified petition for impeachment is by itself a discretionary and not a mandatory act by a voter. Impeachment under § 13–13 is also discretionary in that, "[i]f the court sustains the charge or charges, such officer shall be deemed removed from office." The use of "if" in this sentence suggests that a court could overrule a charge of impeachment, assuming that enough voters signed the petition, thus conditioning the removal of the officer on the further act of the court.

■ Likewise, the CCM's removal remedy under § 12–1, et seq.[30] does not provide an adequate remedy for violation of § 3–3 either, given that removal, like impeachment, is also neither "immediate" nor mandatory. Under CCM § 12–3(2) the petition for recall of an official "shall be signed by not less than twenty percent (20%) of the voters registered in the last general election." Similar to the 5% voter signatures required for impeachment proceedings, gathering 20% of signatures for a recall petition is not a process consistent with the immediacy language in § 3–3. Furthermore, CCM § 12–6[31] speci-

Section 3–1. Composition. There shall be a council composed of nine members who shall be elected-at large. Of the nine members elected to the council, *one shall be a resident of the Island of Lāna'i,* one a resident of the Island of Moloka'i, one a resident of the residency area of East Maui, one a resident of the residency area of West Maui, one a resident of the residency area of Makawao–Ha'iku–Pa'ia, one a resident of the residency area of "Upcountry" comprising Pukalani–Kula–'Ulupalakua, one a resident of the residency area of South Maui, one a resident of the residency area of Kahului, and one a resident of the residency area of Wailuku–Waihe'e–Waikapu. The county clerk shall prepare the nomination papers in such a manner that candidates desiring to file for the office of council member shall specify the residency area from which they are seeking a seat. The ballots shall, nevertheless, be prepared to give every voter in the county the right to vote for each and every council seat.

30. *See* specifically CCM § 12–1 *supra,* at note 7, regarding the general provision of removal.

31. CCM § 12–6 states:

Section 12–6. Recall Election. *If a recall petition or supplemental petition shall be certified by the county clerk to be sufficient,* the county clerk shall at once submit the petition with the certificate to the council and shall notify the officer sought to be recalled of such action. If the officer whose removal is sought does not resign within five (5) days after such notice, the council shall thereupon order and fix a day for holding a recall election. *Any such election shall be held not less than sixty (60) nor more than ninety (90) days after the petition has been presented to the council,* at the same time as any other election held within such period; but if no election is to be held within such period, the council shall call a special recall election to be held within the time aforesaid. *If less than fifty percent (50%) of the voters registered in the last general election shall vote at such recall election, the officer sought to be recalled shall*

fies that a recall election "shall be held not less than sixty (60) ... days after the petition has been presented to the council." Also, CCM § 12–9 states that "[t]he question of the removal of any officer shall not be submitted to the voters until such person has served six (6) months of the term during which the officer is sought to be recalled." Applying these two sections, at the earliest, an officer could only be recalled after eight months of service. Again, an eight month hiatus could not reasonably be considered immediate removal. Thus, the recall remedy under § 12–1, et seq. cannot implement the immediacy requirement in § 3–3 that a "council member shall *immediately* forfeit office." (Emphasis added.)

█ The recall remedy in § 12–6 is also a discretionary measure. First, 20% of the county's voters must exercise their discretion to sign the petition. Second, the county clerk has discretion to deem whether the petition is sufficient for certification. Finally, if the petition results in a recall election, at least 50% of the registered voters must vote, and of that, recall will not take effect without a majority vote.[32] Voting decisions are discretionary. Thus, the recall remedy under § 12–1, et seq. may not create a mandatory "vacancy" of the council member's seat under § 3–3, if the voters vote not to recall the council member.

█ Allowing for discretionary remedies under either impeachment or recall, renders the "vacancy" language in § 3–3 a nullity. Our rules of statutory construction require us to reject an interpretation of a statute that renders any part of the statutory language a nullity. *Potter*, 89 Hawai'i at 422, 974 P.2d at 62–63. Because we determine that the plain meaning and construction of CCM § 3–3 requires a mandatory and immediate forfeiture of office and that such forfeiture automatically results in an immediate vacancy of that office, impeachment, under § 13–13 of the CCM, and recall, under § 12–1, et. seq. of the CCM, do not apply in this

case. Inasmuch as the court concluded to the contrary, the March 19 Order must be reversed.

### B.

█ The second issue, with respect to the first question on appeal, is whether a declaratory action is an available method of relief under § 3–3 of the CCM. Both parties cite to HRS § 632–1 to support their positions. Kaho'ohalahala maintains that declaratory judgment is not available, because other remedies of impeachment, recall, or even quo warranto are available. According to Kaho'ohalahala, under HRS § 632–1, "[w]here ... a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed." But, as discussed *supra*, impeachment and recall under the CCM cannot properly effect the mandatory and immediacy requirements under § 3–3; thus impeachment and recall cannot be special remedies in this case.

As to the remedy of quo warranto, this common law remedy was codified in the HRS under chapter 659 and is defined by § 659–1.[33] Quo warranto is "a common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed." *Black's Law Dictionary* at 1371.

There are two modes of proceeding judicially to ascertain and enforce the forfeiture of a charter for default or abuse of power. The one is by scire facias; and that process is proper where there is a legal existing body, capable of acting, but who have abused their power. The other mode is by information in the nature of a quo warranto; which is in form a criminal, and in its nature a civil remedy; and that proceeding applies where there is a body corporate de facto only, but who take upon themselves to act, though from some defect in their constitution, they cannot legally exercise their powers.

---

*not be deemed recalled regardless of the outcome of the election.*
(Emphases added.)

**32.** CCM § 12–7 states in part, that "[a] majority vote shall be sufficient to recall such officer,

subject to the provisions of Section 12–6 of this Article."

**33.** *See supra* note 17.

*Id.* (quoting 2 James Kent, *Commentaries on American Law* 313 (George Comstock ed., 11th ed. 1866)). In this case, as Plaintiffs correctly state, there is no specific legal body to enforce § 3–3. The following additional definition clarifies the availability of this remedy:

> The remedy or proceeding by which the sovereign or state determines the legality of a claim which a party asserts to the use or exercise of an office or franchise and ousts the holder from its enjoyment, if the claim is not well founded, or if the right to enjoy the privilege has been forfeited or lost.

*Ballantine's Law Dictionary* 1049–50 (3d ed.1969). As construed *supra*, § 3–3 automatically and instantly creates a forfeiture and vacancy of office. Thus, quo warranto would seem to be an appropriate remedy under the allegations in this case.

Kahoʻohalahala relies on cases from foreign jurisdictions and *Kaleikau* for the proposition that declaratory relief cannot replace already-existing procedures such as petitions for quo warranto.[34] In *Kaleikau*, petitioners filed a petition under the declaratory judgment statute, Act 162 S.L.1921,[35] against sixteen people of the Hale O Na Alii O Hawaiʻi society who were allegedly "illegally claiming and pretending to be the duly elected officers of the society." 27 Haw. at 21. This court indicated that a declaratory judgment action was not the appropriate avenue to remove an officer, because there the alleged injury (usurpation of office) *had already occurred,* and, thus, the injury was not merely an uncertain *threat* which could only have been remedied through declaratory judgment but, instead, was an actual injury with already prescribed remedies, i.e., quo warranto. *Id.* at 427–29. This court noted that "it is evident from the language of the act itself that it was not the intention of the legislature to provide a new remedy or method of procedure for cases for which an adequate remedy and method of procedure had already been provided" and is "not to provide new or additional remedies where remedies already existed." *Id.* at 428. This appears similar to the facts of the case at bar, where the injury (usurpation of office) has been alleged to

---

**34.** Plaintiffs allege that Kahoʻohalahala improperly raised this argument only on appeal, but did not raise it in the proceedings below, thus it cannot be argued on appeal. However, as Plaintiffs raised the argument for quo warranto relief below and through the appeal of the denial of their motion for leave to amend, Kahoʻohalahala's argument is responsive to that issue.

**35.** The action for declaratory judgment was brought under Act 162, S.L.1921, which stated:

> Section 1. In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for. Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.
> Section 2. Declaratory judgments may be obtained and reviewed as other judgments, according to the laws of the Territory of Hawaii relating to civil procedure.
> Section 3. Further relief based on a declaratory judgment may be granted whenever necessary or proper. The application shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaration of right, to show cause why further relief should not be granted forthwith.
> Section 4. When a declaration of right or the granting of further relief based thereon shall involve the determination of issues of fact triable by a jury, such issues may be submitted to a jury in the form of interrogatories, with proper instructions by the court, whether a general verdict be required or not.
> Section 5. The parties to a proceeding to obtain a declaratory judgment may stipulate with reference to the allowance of costs, and in the absence of such stipulation the court may make such an award of costs as may seem equitable and just.
> Section 6. This Act is declared to be remedial; its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor; and it is to be liberally interpreted and administered, with a view to making the courts more serviceable to the people.
> *Kaleikau,* 27 Haw. at 424–25.

have *actually* occurred and another remedy, quo warranto, already exists.[36]

Plaintiffs do correctly point out that HRS § 659-10, relating to quo warranto and enacted after the ruling in *Kaleikau*, states that "[n]othing in this chapter shall preclude the obtaining of relief available by quo warranto *by other appropriate action.*" (Emphasis added.) In this regard, Plaintiffs assert that the legislature's enactment of HRS § 659-10 superceded *Kaleikau.* However, the legislative history for HRS § 659-10 is inconclusive on whether the statute rejected *Kaleikau.* The changes made to the quo warranto chapter were part of the legislature's effort to coordinate the HRS, "eliminate inconsistencies; delete outmoded provisions; make improvements of a technical nature; and transfer procedural matters to court rules where advisable." H. Spec. Comm. Rep. No. 9, in 1972 House Journal, at 1116. Furthermore, the section amending extraordinary legal remedies, including quo warranto, states that, "[t]he deletion of the statutory provisions on mandamus, certiorari, prohibition, and *other extraordinary legal remedies* does not signify that the writs have been abolished. *The matter is covered by rules of court and case law.*" *Id.* at 1124 (emphases added). This implies that in adopting HRS § 659-10, the legislature did not intend to specifically eschew *Kaleikau*, but instead, the statute was merely enacted to uphold existing rules and case law.

Plaintiffs alternatively assert that under the current version of HRS § 632-1, declaratory judgment affords the same relief as quo warranto and that declaratory relief is not barred, even when other common law remedies (like quo warranto, Plaintiffs assert) are available. *See supra* note 3. The declaratory judgment act, Act 162, S.L.1921, enacted two years before *Kaleikau* and later recodified as HRS § 632-1, has been amended since the disposition in *Kaleikau.* The subsequent pertinent amendment to the declaratory judgment statute was made by Act 74, S.L. 1945, which added the second paragraph in the current version of HRS § 632-1.[37] As reproduced *supra*, at note 3, that paragraph states:

Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not,

---

**36.** It does not appear in the record that it has been factually determined whether Kahoʻohalahala was a resident of Lānaʻi for purposes of his public office residency requirement. In *Dupree,* this court affirmed the Board's decision that Kahoʻohalahala was not a resident of Lānaʻi for purposes of voter registration. *See supra* note 2. But, the issue of whether Kahoʻohalahala was actually a resident of Lānaʻi for public office purposes appears to be unresolved on any factual basis. In fact, the court's March 19 Order (re Motion for Judgment on Pleadings) states, "[Kahoʻohalahala's] motion does not seek such a determination." Plaintiffs argue that Kahoʻohalahala's non-residency status should have been deemed admitted.

**37.** The other amendments are not relevant to this case. *See* 1925 Revised Laws of Hawaiʻi § 2918, at 1049 (recodifying the section); Revised Laws of Hawaiʻi 1935 § 4220, at 687 (recodifying the section); Revised Laws of Hawaiʻi 1945 § 9971, at 280 (adding a new paragraph regarding the application of the declaratory judgments); 1955 Revised Laws of Hawaiʻi § 228-1, at 1403; 1968 Hawaiʻi Revised Statute § 632-1 at 1403 (recodifying the section); 1972 Haw. Sess. L. Act 89, § 1, at 338 (adding limitation on the use of declaratory judgment in cases of taxes, divorce or annulment of marriage); 1984 Haw. Sess. Laws Act 90 § 1, at 166 (substituting proper section or chapter numbers, changing capitalization for uniformity).

shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.

HRS § 632-1 (emphasis added).

■ The portion of the foregoing paragraph that states "[w]here ... a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed[,]" HRS § 632-1, appears to be consistent with *Kaleikau's* holding that declaratory judgment relief is not available when there are other already existing forms of relief. However the language following, "but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present," puts into question whether *Kaleikau* is still good law. Because the underscored part of the paragraph above appears inconsistent, a review of legislative history is appropriate. *T-Mobile USA, Inc. v. County of Hawaii Planning Comm'n,* 106 Hawai'i 343, 352, 104 P.3d 930, 939 (2005) ("Courts turn to legislative history as an interpretive tool only where a statute is unclear or ambiguous."

(citing *State v. Mueller,* 102 Hawai'i 391, 394, 76 P.3d 943, 946 (2003))); *Hawai'i Providers Network, Inc. v. AIG Hawai'i Ins. Co., Inc.,* 105 Hawai'i 362, 369, 98 P.3d 233, 240 (2004) ("If statutory language is ambiguous or doubt exists as to its meaning, '[c]ourts may take legislative history into consideration in construing a statute.'") (quoting *Franks v. City & County of Honolulu,* 74 Haw. 328, 341, 843 P.2d 668, 674 (1993)).

The Senate Committee on the Judiciary stated that "the purpose of this bill is to expand the proceedings for declaratory judgments to a scope that will render such proceedings of real value[.]" S. Stand. Com. Rep. No. 235, in the 1945 Senate Journal at 656. The committee noted that "[t]he present chapter of the Revised Laws of Hawai'i 1945 on declaratory judgments has been so narrowly construed that the bar generally, hesitates to make use of it." *Id.* at 657. Significantly, the House Committee on the Judiciary stated, "[t]his bill ... will *afford greater relief* by declaratory judgment than the present law. *The benefits sought to be had under present law have been negatived by two decisions of our Supreme Court.*" H. Stand. Com. Rep. No. 76, in 1945 House Journal, at 566. The two decisions are not referenced in the legislative history but it appears that one of the cases referred to was *Kaleikau.*[38]

---

**38.** Prior to the 1945 amendment, this court decided a total of three cases that referenced prior versions of the declaratory judgment act, which subsequently became HRS § 623-1–*Pires v. Phillips,* 31 Haw. 720, 720, 1930 WL 2922 (Haw. Terr.1930) (referencing chapter 170, R.L.1925), *Kaaa v. Waiakea Mill,* 29 Haw. 122, 125, 1926 WL 3003 (Haw.Terr.1926) (referencing chapter 170, R.L.1925), and *Kaleikau,* 27 Haw. at 421 (referencing Act 162, S.L.1921). In *Pires,* the petitioner sought a declaratory judgment of whether a provision in his lease that stated "'[t]hat he' (the leesee) 'will not commit or suffer any waste of said premises, nor cut or in any way destroy any of the inia and algaroba trees now growing on said demised premises, excepting for right of ways, trails, roads and in case of necessity[,]'" prevented him from clearing "cactus or panini" "in order to clear the land for the cultivation of pineapples." *Pires,* 31 Haw. at 722. The respondent demurred to the petition on the ground that the court did not have jurisdiction to render a declaratory judgment. The court overruled the demurrer and the respondent excepted. *Id.* at 721. *Pires,* without any discussion on

jurisdiction, held that the exception could not be sustained and that "[petitioner] in removing the cactus from the premises in question will not be committing waste; but will be acting strictly within his legal rights." *Id.* at 723. Inasmuch as *Pires* did not limit the scope or benefit of the declaratory judgment statute, it was likely not one of the two cases that was considered by the legislature when it noted that "two decisions by our Supreme Court" "negatived" the "benefits sought under present law[.]" Stand. Com. Rep. No. 76, in 1945 House Journal, at 566.

On the other hand, both *Kaaa* and *Kaleikau* restricted jurisdiction under the declaratory statute. As discussed *supra, Kaleikau* held that in an action seeking to obtain a declaratory judgment, the court did not have jurisdiction where the respondents were not merely threatening to invade the rights of the petitioners, but had already infringed these rights, and an immediate cause of action in quo warranto existed. In *Kaaa,* petitioners, holders of homestead lots at Waiakea, Maui who signed agreements made with respondent Waiakea Mill Company, filed a petition seeking declaratory judgment. 29 Haw. at 122–

In light of the desire to afford greater relief under the declaratory statute and the reference to "two decisions of our Supreme Court" which "negatived" benefits under the statute, the legislative history suggests that in amending section 9976 of the Revised Laws of Hawaiʻi 1945, the legislature intended to "afford [citizens] greater relief" under the declaratory judgment statute than that given in *Kaleikau.* Thus, *Kaleikau* does not appear to preclude Petitioner from bringing a declaratory judgment action under the current HRS § 632–1, even though quo warranto relief is available provided that "the other essentials to such relief are present." HRS § 632–1.[39]

 Here, a claim for quo warranto is not before this court. Thus, it would be premature for this court to determine whether quo warranto is the only appropriate remedy to the exclusion of an action for declaratory judgment before that question is presented to the court on remand. Because we conclude that it would be premature to decide whether quo warranto precludes a declaratory judgment action, the March 19 Order Granting [Kahoʻohalahala's] Motion for Judgment on the Pleadings must also be reversed on this ground.[40]

## VII.

 In that connection, the second question raised on appeal is whether the court abused its discretion when it denied Plaintiffs leave to amend the complaint to designate quo warranto as a form of relief. As noted before, unless there is an apparent reason indicating otherwise, under HRCP Rule 15(a), leave to amend "shall be freely given" to a party to amend its complaint "when justice so requires." [41] *See Hirasa*, 68 Haw. at 26, 702 P.2d at 775. This court reviews a denial of leave to amend a complaint pursuant to HRCP Rule 15(a) under the abuse of discretion standard. *Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd.*, 100 Hawaiʻi 149, 158, 58 P.3d 1196, 1205 (2002) (stating that "this court reviews the [court's] denial of a motion to amend a complaint under the abuse of discretion standard"). "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State ex rel. Bronster v.*

---

23. The petition alleged that the respondent violated the terms of the agreements and therefore "an actual controversy exist[ed] between each of the [petitioners] and the respondent" which "require[d] the determination of the court under the Declaratory Judgment Act (Ch. 170, R.L.1925) in that [petitioners] 'assert their right to the rescission . . .' of said agreement[.]" *Id.* at 125. The respondent filed a demurrer. *Id.* The trial court sustained the demurrer and dismissed the petition. *Id.* On appeal, one of the issues was whether the petition "state[d] facts sufficient to give the petitioners a cause of action against respondent under the Declaratory Judgement Act." *Id.* at 126. This court determined that "a cause of action or suit under established methods of procedure, ha[d] accrued in favor of petitioners," and recognized that *Kaleikau* held that "courts will not entertain jurisdiction under the Declaratory Judgment Act when it appears that the wrongs complained of have already been committed and the cause of action already exists, but will leave the injured party to seek redress according to the established methods of procedure." *Id.* at 127–28.

Further, *Kaaa* rejected petitioners' contention that "all that was held in [*Kaleikau* ] was that the court would not take jurisdiction under the declaratory judgment law when there is some other *statutory* mode of proceeding provided for." *Id.* at 128 (emphasis in original). Instead, *Kaaa*

asserted that *Kaleikau* "show[ed] clearly" that "relief under the Declaratory Judgment Act was not obtainable where relief was already obtainable under established methods of procedure" and "did not base its decision on the fact that relief was provided for by statute[.]" *Id.* Therefore, *Kaaa* rejected the petitioners' contention that declaratory judgment was applicable because "there was no reason to believe that . . . in an appropriate action at law or suit in equity, the courts have not ample power to afford petitioners full, adequate and complete relief." *Id.* at 127. Because *Kaaa* and *Kaleikau* both established the limitations on a court's jurisdiction under the declaratory judgment act, it is probable that the Committee on the Judiciary was referring to these two cases in its Committee Report.

39. Under HRS § 632–1, all "other essentials" for declaratory relief must be met.

40. .On remand, of course, this decision does not require that Plaintiffs proceed under both declaratory judgment and quo warranto.

41. HRCP Rule 15(a) (2000) states in part, that "a party may amend the party's pleading . . . by leave of court . . .; and leave shall be freely given when justice so requires."

*U.S. Steel Corp.*, 82 Hawaiʻi 32, 54, 919 P.2d 294, 316 (1996) (internal citations omitted).

■■ This court has previously held that Rule 15(a) of the HRCP is functionally identical to Rule 15(a) of the Federal Rules of Civil Procedure. *Fed. Home Loan Mortg. Corp*, 89 Hawaiʻi at 162 n. 1, 969 P.2d at 1280 n. 1. "Where a Hawaiʻi rule of civil procedure is identical to the federal rule, the interpretation of this rule by federal courts is highly persuasive." *Id.* (quoting *Wong v. Takeuchi*, 88 Hawaiʻi 46, 52, 961 P.2d 611, 617 (1998) (other citation omitted)). In *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the U.S. Supreme Court stated that the Court of Appeals had erred in affirming the District Court's denial of petitioner's motion to vacate the judgment in order to allow amendment of the complaint. "As appears from the record, the amendment would have done no more than state an alternative theory for recovery." *Foman*, 371 U.S. at 182, 83 S.Ct. 227. The Court went on to state:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. *If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.* In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any jus-

tifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id.* (emphasis added) (internal citations omitted). Here, an amendment to the complaint alleging a claim of quo warranto would do "no more than state an alternate theory" for relief. *Id.*

Although Kahoʻohalahala asserts that he would suffer prejudice if the amendment were allowed, the assertion is not persuasive. According to Kahoʻohalahala, when sued in his official capacity, Corporation Counsel had a duty to represent him, but because Corporation Counsel previously refused to represent him, he would be faced with having to resort to privately-retained counsel, incurring personal costs and expenses.[42] This argument is unavailing because as Plaintiffs correctly point out, in a quo warranto proceeding Kahoʻohalahala would still face the lawsuit in his personal capacity, as the suit is brought in the name of the State. HRS § 659–1 defines quo warranto as "an order issuing in the *name of the State* by a circuit court and directed to a person who claims or usurps an office of the State, *or of any subdivision thereof.*" (Emphasis added.) Moreover, this issue was not definitively resolved by the court below as there is no clear indication that the court denied the motion to amend due to prejudice against Kahoʻohalahala. The only statement recorded refers to the court's incorrect finding at the hearing on the motion for judgment on the pleadings that § 3–3 imposed a duty upon the officer to forfeit his office and that failure to do so constituted nonfeasance, as to which declaratory judgment would not be an appropriate remedy.

■■ "The trial court abuses its discretion if it bases its ruling on an erroneous view of

---

**42.** In his Answering Brief Kahoʻohalahala refers back to the record, specifically his memorandum in opposition to Plaintiffs' motion for leave to amend, where it states, "In light of this motion, [Kahoʻohalahala]—as a sitting member of the Maui County Council—tendered his defense in this case to Corporation Counsel, but was told that Corporation Counsel would not represent him at this time." As noted before, there is no reason given for Corporation Counsel's denial.

It may be that if Kahoʻohalahala continues to be sued in his personal capacity, Corporation Counsel cannot yet represent him. But it appears that Corporation Counsel has not foreclosed the possibility of representing him in the future, should he later be sued in his official capacity. It appears that Corporation Counsel simply declined to tender his defense "at this time," i.e., while he is sued in his personal capacity.

the law or on a clearly erroneous assessment of the evidence." *Lepere v. United Pub. Workers, Local 646*, 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995) (quotation marks and brackets omitted). Given the lack of any findings of prejudice against Kaho'ohalahala or findings of any other exception warranting denial to amend the complaint, and given that the court appears to have based its denial on a wrong view of the law, it must be concluded that there was an abuse of discretion. As Plaintiffs were apparently attempting to state an alternative theory of relief by way of quo warranto, leave to amend the complaint should have been granted. Because leave to amend should otherwise be "freely given," HRCP Rule 15(a), the May 7 Order denying Plaintiffs' motion for leave to amend its complaint must be reversed. On remand, the court is ordered to permit Plaintiffs to amend their complaint to include quo warranto relief.

## VIII.

For the reasons stated herein, the court's March 19 Order and May 7 Order are reversed, the Judgment is vacated, and the case remanded for disposition consistent with this opinion.